Bathaee :: Dunne :: LLP

August 30, 2022 (*By ECF*)

Re: *Crowder, et al. v. LinkedIn Corporation*, No. 4:22-cv-00237-HSG
Dispute re Plaintiffs' First Set of Interrogatories and First Set of Requests for Production

Dear Judge Gilliam:

Pursuant to Paragraph 19 of the Court's Standing Order for Civil Cases, Plaintiffs Todd Crowder, Kevin Schulte, and Garrick Vance and Defendant LinkedIn Corporation ("LinkedIn") submit this joint letter setting forth their positions on a dispute regarding Plaintiffs' First Set of Interrogatories and First Set of Requests for Production. The parties met and conferred on July 12, 2022, and reached impasse on the issues below.

## Plaintiffs' Position

Plaintiffs file this joint letter because LinkedIn has unilaterally refused to respond to narrow, targeted discovery for months—and has promised to continue this refusal for an indefinite period going forward—without moving for a stay. This is an antitrust case and putative class action under Sections 1 and 2 of the Sherman Act. Plaintiffs are purchasers of LinkedIn's "Premium" professional social networking services, and allege they were anticompetitively overcharge for them. Plaintiffs' Class Action Complaint ("CAC") alleges that LinkedIn unlawfully monopolized (or attempted to monopolize) the Professional Social Networking Services Market in violation of Section 2 through four categories of exclusionary conduct: LinkedIn's (1) sale of user data to hand-selected "Partners" under exclusive dealing agreements; (2) design and deployment of technical countermeasures that negate user intent to make certain information publicly available; (3) anticompetitive integration with parent company Microsoft's cloud computing systems; and (4) agreement with Facebook to divide markets, with Facebook agreeing not to compete in the Professional Social Networking Services Market, likely in exchange for user-data-related considerations from LinkedIn. Plaintiffs also allege that the Facebook market-division agreement independently constitutes a *per se* illegal restraint of trade under Section 1.

The parties held their Rule 26(f) discovery conference on Mar. 29, 2022. That conference triggered the commencement of discovery in this case, though LinkedIn apparently didn't think so. On Apr. 12, 2022, LinkedIn moved to dismiss the CAC. (Dkt. 27.) In the Joint Case Management Statement filed that same day, LinkedIn stated, "discovery should not commence, if at all, until after the Court rules on LinkedIn's Motion to Dismiss." (Dkt. 25 at 10.) Keeping to that promised recalcitrance, LinkedIn has provided essentially no discovery to date. It has produced no documents in response to Plaintiffs' requests for production, and has refused to substantively answer Plaintiffs' interrogatories. LinkedIn never actually moved the Court for a stay of discovery—it simply declared one on its own.

On May 27, 2022, Plaintiffs served two sets of discovery requests: their First Set of Interrogatories and First Set of Requests for Production. Mindful of LinkedIn's expressed concern about the supposed burden of having to provide discovery with a motion to dismiss pending, while also recognizing the need to get the ball rolling on what could be a lengthy discovery process involving a voluminous record, Plaintiffs narrowly tailored their requests to seek information and documents on a handful of discrete topics relating to LinkedIn's alleged anticompetitive conduct. Plaintiffs' consideration of LinkedIn's concerns went unrequited, as LinkedIn declined to provide even a modicum of information or documents to begin moving this case along.

August 30, 2022
Page 2

To minimize any potential burden on LinkedIn, Plaintiffs served just ***six*** targeted interrogatories, seeking information on (1) the LinkedIn "Partners" to which LinkedIn sold private user data and how those Partners obtained access to that data through LinkedIn's private Application Programming Interfaces ("APIs") (Rogs 1-3); (2) violations by LinkedIn Partners and others of LinkedIn's Terms of Use, which cover among other things the use of LinkedIn's APIs and user data (Rogs 5-6); and (3) agreements between LinkedIn and Facebook (now known as "Meta") concerning the sharing, scraping, exchange, or purchase of LinkedIn or Facebook user data (Rog 4). *See* Ex. A (excerpt of Pls.' First Set of Interrogs.). There is no serious dispute that these topics are relevant to Plaintiffs' claims—they bear directly and particularly on LinkedIn's alleged exclusionary conduct—yet LinkedIn flatly refused to provide substantive responses to any of them. Likewise, Plaintiffs served just ***four*** requests for production, seeking documents relating to these same topics. *See* Ex. B (excerpt of Pls.' First Set of RFPs.). Again, LinkedIn refused to comply, producing no documents in response.

The hearing on LinkedIn's motion to dismiss is set for September 8, 2022. By then, LinkedIn's unauthorized, self-granted stay will have stretched to more than three months from when Plaintiffs served their requests. Absent relief from the Court, it could extend far longer. It is long past time for LinkedIn to comply with its obligations under the Federal Rules and participate in discovery.

As this Court has observed, "[t]he Federal Rules of Civil Procedure do not provide for an automatic stay of discovery when a potentially dispositive motion is pending." *Yamasaki v. Zicam LLC*, No. 21-CV-02596-HSG, 2021 WL 3675214, at *1 (N.D. Cal. Aug. 19, 2021). While district courts undoubtedly have discretion to grant such stays, a party may not impose a stay on its say-so; rather, it must seek a protective order from the court under Rule 26(c). *See Yamasaki*, 2021 WL 3675214, at *1. When that happens, the burden is on the party resisting discovery—i.e., LinkedIn—to establish that a stay is appropriate. *See id.* (describing two-prong test to determine whether a stay is appropriate, the first of which is that "*the moving party* must demonstrate that the pending motion is potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed" (emphasis added and internal quotation marks omitted)). Not only has LinkedIn not met this burden—it hasn't even tried.

Nor does LinkedIn have any plausible complaint that the narrowly targeted discovery sought by Plaintiffs is irrelevant to Plaintiffs' claims. Indeed, LinkedIn's principal motion-to-dismiss argument with respect to the Facebook market-division agreement is that Plaintiffs lack "direct evidence of the alleged agreement." LinkedIn Mot. to Dismiss at 19 (Dkt. 27). While the CAC plausibly alleges the existence of this unlawful agreement through circumstantial evidence, *see* Pls.' Opp'n Br. at 21-25 (Dkt. 38), it is precisely this "direct evidence" that Plaintiffs now seek in discovery.

Consistent with the Court's preference for the expeditious resolution of cases, Plaintiffs submit that discovery—already too-long delayed—should begin now. *See* Court's Standing Order for Civil Cases ¶ 14 ("The Court's expectation is that many cases can and should be able to be tried within twelve months of the case management conference. Counsel requesting longer pretrial periods must be prepared to justify that request at the initial case management conference."). In fact, discovery *has* already begun, but LinkedIn has refused to abandon the fiction that it has been stayed. Plaintiffs thus respectfully request that LinkedIn be ordered and to substantively respond to Plaintiffs' pending discovery requests as soon as possible. Indeed, even when this Court has stayed discovery during the pendency of a motion to dismiss, it has left open the possibility of the stay being lifted after the motion has been "fully briefed and argued." *Yamasaki*, 2021 WL 3675214, at *2 n.1. With no stay in place here, there is certainly no justification for LinkedIn to maintain its unilateral refusal to respond past the September 8 motion-to-dismiss hearing date at the very latest.

August 30, 2022
Page 3

## LinkedIn's Position

As LinkedIn has consistently maintained since the inception of this matter, it would be a waste of the parties' and the Court's resources to engage in discovery and related disputes until after the pleadings and the scope of any remaining claims in this case are settled. This is a position that is supported by Ninth Circuit caselaw and the Court's recent opinion in another antitrust matter. LinkedIn was prepared in April to discuss this position with the Court and to seek its guidance as to whether a motion to stay would be necessary, but the case management conference was rescheduled to September. The fact that Plaintiffs are seeking relief from the Court now, nearly five months after LinkedIn made its position clear and just before the motion to dismiss hearing — only underscores the wastefulness of Plaintiffs' request. Significantly, Plaintiffs fail to note (despite LinkedIn reminding them) that the parties would need to negotiate and execute an ESI protocol and stipulated protective order before any discovery can be produced. But in the six weeks since the parties' meet-and-confer conference, Plaintiffs have made no proposals or inquiries about either. Accordingly, LinkedIn respectfully requests that the Court deny Plaintiffs' request to compel discovery.

Staying discovery until after LinkedIn's motion to dismiss is decided would be consistent with the position of this Court in another recent antitrust matter. *See California Crane School, Inc. v. Google LLC*, 2022 WL 1271010, at *1 (N.D. Cal. Apr. 28, 2022) ("[I]n the usual antitrust case, the Court believes it is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery.") (Gilliam, J.); *see also Yamasaki*, 2021 WL 3675214, at *2 (consumer protection class action cited by Plaintiffs above, granting motion to stay during pendency of motion to dismiss) (Gilliam, J.). As the Ninth Circuit acknowledged, "discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008); *see also Reveal Chat Holdco, LLC v. Facebook, Inc.* 2020 WL 2843369, at *4 (N.D. Cal. Apr. 10, 2020) (recognizing the extraordinary expense and burden that discovery places on antitrust defendants); *In re Google Digital Advertising Antitrust Litigation*, 2020 WL 7227159, at *3 (N.D. Cal. Dec. 8, 2020) (same).

Here, LinkedIn's Motion to Dismiss demonstrates that Plaintiffs "do not have much of a case." *Kendall*, 518 F.3d at 1047. Ordering LinkedIn to provide discovery for claims that have no realistic possibility of proceeding past the pleading stage fails to serve any purpose except to impose upon LinkedIn the substantial costs of defending against baseless antitrust claims. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007) ("It is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive."); *Pro Search Plus LLC v. VFM Leonardo, Inc.*, 2013 WL 3936394, at *1 (C.D. Cal. July 30, 2013) ("[T]he Supreme Court has cautioned against permitting antitrust cases to proceed to discovery without a plaintiff demonstrating 'plausibility' because of the high cost of discovery in antitrust cases in particular."). Doing so would be counter to the "purpose of F.R.Civ.P. 12(b)(6), [which] is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery. In antitrust cases this procedure especially makes sense because the costs of discovery in such actions are prohibitive." *Rutman Wine Co v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987); *see also Dominguez v. County of Los Angeles*, 2018 WL 1136893, at *7 (C.D. Cal. Mar. 1, 2018) ("To ignore Plaintiff's utter failure to plead facts to support the existence of a conspiracy and instead permit the matter to proceed on a fishing expedition in search of facts to support the cause of action would fly in the face of Rule 12(b)(6) and the Supreme Court's holdings in *Iqbal* and *Twombly*.").

August 30, 2022
Page 4

Furthermore, LinkedIn does not agree that Plaintiffs' discovery requests were tailored to the allegations in their Complaint. For example, Plaintiffs' fourth request for production seeks "all documents from January 1, 2016 to the present, concerning any actual, potential, or investigated violation of the LinkedIn API Terms of Use." Similarly, Plaintiffs' Interrogatory Nos. 5 and 6 ask LinkedIn to identify all persons whom LinkedIn has investigated and/or determined to have violated LinkedIn's API Terms of Use. There is no claim or allegation in the Complaint addressing violations of LinkedIn's API agreements, let alone *all* violations. In addition, Plaintiffs did not counter this or any other specific objection during the parties meet and confer or since.

Plaintiffs' course of conduct here further supports waiting to resolve the pleadings before discovery begins. In particular, Plaintiffs omit several key facts that undermine the positions they take.

- First, LinkedIn has been transparent from the beginning that discovery should not begin until the pleadings are settled. It stated its position very clearly in the April 12, 2022 Joint Case Management Statement that "commencing any discovery now, particularly given the breadth of the discovery sought by Plaintiffs, would be a waste of the parties' and the Court's resources." Dkt. 25.[1] LinkedIn also stated that it would seek guidance from the Court on this issue at the April 19, 2022 case management conference. *Id.* Thus, Plaintiffs' characterization of LinkedIn as "promis[ing] to continue this refusal [to provide discovery] for an indefinite period going forward — without moving for a stay" is demonstrably false. LinkedIn was prepared to discuss with the Court in April whether a motion to stay was necessary, but on April 14, 2022, this Court rescheduled the case management conference to September 8, 2022 — the same day as the motion to dismiss hearing. Dkt. 34.

- Second, Plaintiffs waited until May 27, 2022 (more than eight weeks after the parties' March 29, 2022 Rule 26(f) conference) to serve their first set of discovery requests. Exs. A & B. Notwithstanding LinkedIn's objection to discovery proceeding, LinkedIn provided timely and thorough objections and responses to Plaintiffs' requests. The parties then met and conferred on July 12, 2022 — more than six weeks ago. At that conference, LinkedIn stated the position it presented earlier and that it now repeats here —that the Court was scheduled to hear LinkedIn's motion to dismiss in two months (now less than two weeks), and it would be a waste of resources to engage in discovery disputes that may become moot, resolution of which would be unlikely to occur prior to the motion to dismiss hearing.

- Third, Plaintiffs omit that in the July 12, 2022 conference, LinkedIn stated that the parties would need to enter into a stipulated protective order and ESI protocol in order for any discovery to be produced. Plaintiffs did not disagree. But in the six weeks that followed, Plaintiffs never followed up on that or any other issue discussed during the conference or propose drafts of either document. Instead, Plaintiffs waited until August 22, 2022 to propose this submission to the Court based on the position LinkedIn made clear nearly five months earlier.

In sum, LinkedIn believes that discovery should wait until it is clear what, if anything, survives from the Plaintiffs' Complaint.

---

[1] LinkedIn also declined to propose a case schedule "given its potentially dispositive Motion to Dismiss," and stated its position that scheduling should not occur until after the Motion is resolved. *Id.*

August 30, 2022
Page 5


Respectfully submitted,

| | |
|---|---|
| */s/ Brian J. Dunne* | */s/ Shylah R. Alfonso* |
| Brian J. Dunne | Shylah R. Alfonso |
| Bathaee Dunne LLP | Perkins Coie LLP |
| *Counsel for Plaintiffs and the Proposed Class* | *Counsel for Defendant LinkedIn Corporation* |

# Exhibit A

# INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all Persons, including Persons You refer to as "Partners," to whom You provide (or, at some point since January 1, 2016, have provided) access to LinkedIn Application Programming Interfaces ("APIs") that can be queried or used to obtain nonpublic LinkedIn user data.

**INTERROGATORY NO. 2:**

For each Person Identified in Interrogatory 1, identify the specific APIs that each Person is (or at some point since January 1, 2016, has been) permitted to access and the scope of permitted use.

**INTERROGATORY NO. 3:**

Identify every LinkedIn API that can be (or, since January 1, 2016, could have been) queried or used to obtain nonpublic LinkedIn user data.

**INTERROGATORY NO. 4:**

Identify all agreements, contracts, and established courses of dealing between You and Meta Platforms, Inc. (f/k/a Facebook, Inc.) from November 1, 2012, to the present concerning the sharing, scraping, exchange, or purchase of LinkedIn or Meta user data.

**INTERROGATORY NO. 5:**

Identify all Persons, including Persons You refer to as "Partners," whom You have investigated for actual or potential violations of the LinkedIn API Terms of Use (the "API ToU"), including for violations of Section 3 of the API ToU, from January 1, 2016, to the present.

**INTERROGATORY NO. 6:**

Identify all Persons, including Persons You refer to as "Partners," whom You have determined to have violated the LinkedIn API ToU, including Section 3 of the API ToU, from January 1, 2016, to the present.

# Exhibit B

7.      The following Requests are continuing in nature pursuant to Rule 26(e) of the Federal Rules of Civil Procedure so as to require You to promptly produce supplemental or additional responsive Documents when You become aware of their existence, up to and including through the time of trial.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

All Documents between November 1, 2012, and the present concerning any agreement, contract, or established course of dealing between You and Meta Platforms, Inc. (f/k/a Facebook, Inc.) or any of its parents, affiliates, or subsidiaries, including but not limited to any agreements concerning the exchange, scraping, sharing, or sale of LinkedIn or Meta user data.

**REQUEST NO. 2:**

All Documents concerning any agreement, contract, or established course of dealing between You and any third party, from January 1, 2016, to the present, concerning access to nonpublic LinkedIn user data, including but not limited to access to such data through LinkedIn's Application Programming Interfaces ("APIs").

**REQUEST NO. 3:**

Documents sufficient to show, from January 1, 2016, to the present, all APIs through which nonpublic LinkedIn user data can or could be queried or obtained, and for each such API, documents sufficient to show which third parties are or were provided access to them and for what purpose.

**REQUEST NO. 4:**

All Documents from January 1, 2016, to the present, concerning any actual, potential, or investigated violation of the LinkedIn API Terms of Use ("API ToU"), including any violations of Section 3 of the API ToU.