**BATHAEE DUNNE LLP**
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel.: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel.: (213) 462-2772

**KOREIN TILLERY P.C.**
Carol L. O'Keefe (*pro hac vice*)
cokeefe@koreintillery.com
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Tel.: (314) 241-4844

**BURKE LLP**
Christopher M. Burke (CA 214799)
cburke@burke.law
Yifan (Kate) Lv (CA 302704)
klv@burke.law
402 West Broadway, Suite 1890
San Diego, CA 92101
Tel: (619) 369-8244

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TODD CROWDER, et al., | Case No. 4:22-cv-00237-HSG |
| Plaintiffs, | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| LINKEDIN CORPORATION, | Hon. Haywood S. Gilliam, Jr. |
| Defendant. | Hearing Date: October 2, 2025 Time: 2:00 p.m. Courtroom 2, 4th Floor |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................2

BACKGROUND ...................................................................................................................3

I.     PLAINTIFFS' CLAIMS ...............................................................................................3

II.    HISTORY OF THE LITIGATION ..............................................................................4

III.   THE PROPOSED SETTLEMENT ..............................................................................5

    A.    The Settlement Class...............................................................................6

    B.    The Settlement Relief .............................................................................6

    C.    Scope of the Release ..............................................................................7

    D.    Notice to the Class and Opt-Out Rights.................................................7

    E.    Attorney's Fees, Costs, and Service Awards .........................................8

    F.    Other Cases ............................................................................................8

ARGUMENT ........................................................................................................................8

I.     PLAINTIFFS HAVE ARTICLE III STANDING .......................................................9

II.    THE PROPOSED CLASS SHOULD BE PRELIMINARILY CERTIFIED ....................9

    A.    The Rule 23(a) Requirements Are Met..................................................10

         1.    Numerosity.................................................................................10

         2.    Commonality..............................................................................10

         3.    Typicality...................................................................................10

         4.    Adequacy of Representation ......................................................11

    B.    The Rule 23(b)(2) Requirements Are Met ............................................12

    C.    The Court May Exercise Its Discretion to Permit Opt-Out Rights........12

III.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL ......................................13

    A.    Plaintiffs and Counsel Have Adequately Represented the Class..........................14

    B.    The Settlement Was Negotiated at Arm's Length .................................15

    C.    The Relief Provided for the Class Is Adequate.....................................15

         1.    Value of relief ...........................................................................16

         2.    The costs, risks, and delay of trial and appeal .........................18

         3.    Proposed method of distributing relief to the class..................19

         4.    Proposed award of attorney's fees ............................................20

         5.    Agreements required to be identified under Rule 23(e)(3).......23

    D.    The Settlement Treats Class Members Equitably Relative to Each Other ...........23

IV.   THE CLASS NOTICE PLAN SHOULD BE APPROVED...........................................24

i

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Abadilla v. Precigen, Inc.*,
    2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ................................................................. 14, 18

*Ang v. Bimbo Bakeries USA, Inc.*,
    2020 WL 2041934 (N.D. Cal. Apr. 28, 2020) .......................................................................... 22

*B.K. by next friend Tinsley v. Snyder*,
    922 F.3d 957 (9th Cir. 2019) ......................................................................................... 11, 12

*Briseño v. Henderson*,
    998 F.3d 1014 (9th Cir. 2021) .............................................................................................. 20

*Campbell v. Facebook Inc.*,
    2017 WL 3581179 (N.D. Cal. Aug. 18, 2017) .............................................................. *passim*

*Carlotti v. ASUS Computer Int'l*,
    2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ....................................................................... 20

*Chang v. Wells Fargo Bank, N.A.*,
    2022 WL 17825122 (N.D. Cal. Dec. 20, 2022) ................................................................. 13, 23

*Cottle v. Plaid Inc.*,
    340 F.R.D. 356 (N.D. Cal. 2021) ......................................................................................... 14

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008) .............................................................................................................. 9

*Doster v. Kendall*,
    54 F.4th 398 (6th Cir. 2022) ................................................................................................ 12

*Dukes v. Wal-Mart Stores, Inc.*,
    603 F.3d 571 (9th Cir. 2010) ............................................................................................... 12

*Etter v. Thetford Corp.*,
    2016 WL 11745096 (C.D. Cal. Oct. 24, 2016) ....................................................................... 6

*Frank v. Gaos*,
    586 U.S. 485 (2019) .............................................................................................................. 9

*FTC v. Actavis, Inc.*,
    570 U.S. 136 (2013) ............................................................................................................. 16

*FTC v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ............................................................................................... 18

*Guttmann v. Ole Mexican Foods, Inc.*,
    2016 WL 9107426 (N.D. Cal. Aug. 1, 2016) ....................................................................... 23

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................................................. 18

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................... 15, 21, 22

*In re Cal. Pizza Kitchen Data Breach Litig.*,
    129 F.4th 667 (9th Cir. 2025) ............................................................... *passim*

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
    21 F.4th 1102 (9th Cir. 2021) ............................................................... 17, 23

*In re Google LLC St. View Elec. Commc'ns Litig.*,
    611 F. Supp. 3d 872 (N.D. Cal. 2020) ............................................................... 23

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ............................................................... 8, 9, 11, 22

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................... 14

*In re N.J. Tax Sales Certificates Antitrust Litig.*,
    750 F. App'x 73 (3d Cir. 2018) ............................................................... 19

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ............................................................... 12, 24

*In re PFA Ins. Mktg. Litig.*,
    2024 WL 1145209 (N.D. Cal. Feb. 5, 2024) ............................................................... 20

*Johnson v. City of Grants Pass*,
    72 F.4th 868 (9th Cir. 2023) ............................................................... 10

*Littlejohn v. Copland*,
    819 F. App'x 491 (9th Cir. 2020) ............................................................... 17

*Lou v. Am. Honda Motor Co., Inc.*,
    2025 WL 1359067 (N.D. Cal. May 9, 2025) ............................................................... 16

*Low v. Trump Univ., LLC*,
    881 F.3d 1111 (9th Cir. 2018) ............................................................... 24

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ............................................................... 12, 24

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
    2019 WL 343472 (N.D. Cal. Jan. 28, 2019) ............................................................... 14, 15

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ............................................................... 9, 10

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................... 15, 18, 19

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ............................................................... 23

*Stiner v. Brookdale Senior Living, Inc.*,
    2025 WL 1676276 (N.D. Cal. June 13, 2025) ............................................................... 22

iv

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................................. 9

*Vu v. I Care Credit, LLC*,
   2022 WL 22871480 (C.D. Cal. Nov. 4, 2022) ............................................. 13, 24

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................... 10

*Wit v. United Behav. Health*,
   2020 WL 6462401 (N.D. Cal. Nov. 3, 2020) ............................................... 18

## Statutes and Rules

15 U.S.C. § 26 ....................................................................................... 10

Fed. R. Civ. P. 23 ............................................................................... *passim*

## Other Authorities

2 Newberg and Rubenstein on Class Actions § 4:36 (6th ed. June 2025 update) ............... 12

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on October 2, 2025, at 2:00 p.m., before the Honorable Haywood S. Gilliam, Jr., of the United States District Court for the Northern District of California, Oakland Division, 1301 Clay Street, Oakland, California, Courtroom 2, 4th Floor, Plaintiffs Todd Crowder, Kevin Schulte, and Garrick Vance, on behalf of themselves and all others similarly situated, will and now do move the Court for an order granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement pursuant to Federal Rule of Civil Procedure 23.

Plaintiffs seek entry of an order (1) preliminarily certifying the proposed class for settlement purposes, (2) preliminarily approving the proposed settlement, (3) provisionally appointing Yavar Bathaee of Bathaee Dunne LLP and Christopher M. Burke of Burke LLP as co-lead class counsel, (4) provisionally appointing Plaintiffs as class representatives, (5) approving the proposed notice plan, (6) appointing A.B. Data, Ltd., as the notice administrator, and (7) setting a fairness hearing for final approval of the Settlement and to consider the application for attorney's fees, service awards, and reimbursement of litigation costs and expenses. Plaintiffs propose that the Settlement Class be defined as follows:

> all persons, entities, and corporations in the United States who purchased LinkedIn Premium services online on LinkedIn.com or via a LinkedIn mobile application from the period beginning January 13, 2018, to the present and are current LinkedIn members.

Excluded from the Settlement Class are: (a) the Defendant; (b) its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case.

This motion is based upon this notice of motion, the accompanying memorandum of points and authorities, all filed supporting declarations and exhibits, the records from this action, and any argument that may be presented at or before the hearing on this motion.

### INTRODUCTION

Plaintiffs Todd Crowder, Kevin Schulte, and Garrick Vance respectfully request preliminary approval of the proposed class settlement ("Settlement") they have reached with Defendant LinkedIn Corporation ("LinkedIn").

After arm's-length negotiations facilitated by an experienced mediator, the parties entered into the Stipulation and Agreement of Settlement ("Settlement Agreement") attached as Exhibit 1. The Settlement provides meaningful injunctive relief to Plaintiffs and the proposed settlement class, which comprises all current LinkedIn members who purchased LinkedIn Premium services from January 13, 2018, to the present (the "Settlement Class"). Plaintiffs, on behalf of themselves and the proposed class, assert claims against LinkedIn under Section 2 of the Sherman Act for monopolization and attempted monopolization of the United States Professional Social Networking Market. Plaintiffs allege that LinkedIn has entered into a series of "private API agreements" that offer potential rivals privileged access to private LinkedIn user data in exchange for restraints against competing with LinkedIn. These agreements have, according to Plaintiffs, helped LinkedIn maintain its monopoly in the Professional Social Networking Market, thereby allowing LinkedIn to charge supracompetitive prices for LinkedIn Premium subscriptions and reducing consumer choice. Under the Settlement, LinkedIn would be enjoined for three years from entering into or enforcing the noncompetition provisions Plaintiffs complain of, thus remediating the anticompetitive conduct at the core of this suit, invigorating competition and thereby enabling reduced prices and increased consumer choice—not only for LinkedIn Premium subscribers but for future purchasers of professional social networking services marketwide.

As shown below, the Settlement readily satisfies the standard for preliminary approval—namely, that at the final-approval stage, the Court will likely find the Settlement fair, reasonable, and adequate under Rule 23(e)(2) and will likely certify the Settlement Class. *See* Fed. R. Civ. P. 23(e)(1)(B). Plaintiffs therefore respectfully request that the Court enter an order (1) preliminarily certifying the proposed class for settlement purposes, (2) preliminarily approving the Settlement, (3) provisionally appointing Yavar Bathaee of Bathaee Dunne LLP and Christopher M. Burke of Burke LLP as co-lead class counsel, (4) provisionally appointing Plaintiffs as class

representatives, (5) approving the proposed notice plan, (6) appointing A.B. Data, Ltd., as the notice administrator, and (7) setting a fairness hearing for final approval of the Settlement and to consider the application for attorney's fees, service awards, and reimbursement of litigation costs and expenses.

## BACKGROUND

### I.    PLAINTIFFS' CLAIMS

As alleged in the operative First Amended Class Action Complaint ("FAC"), Dkt. No. 65, LinkedIn is a monopolist in the U.S. Professional Social Networking ("PSN") Market. FAC ¶¶ 386, 400. A professional social network is a specific type of social network that is intended to be used exclusively for business- and career-related communications and connections. *Id.* ¶¶ 327-33. The PSN Market includes subscription-based products offering premium features for which some users are willing to pay money, such as insight into competing job candidates, interview resources, cold-introduction functionality, recruiting tools, and lead-generation tools. *Id.* ¶¶ 326, 360-68. LinkedIn's premium services include LinkedIn Premium Career, LinkedIn Premium Business, LinkedIn Sales Navigator, LinkedIn Recruiter Lite, LinkedIn Learning, and Company Pages (collectively, "LinkedIn Premium"). Ex. 1 ¶ 1.15 (Settlement Agmt.). The PSN Market is protected by a powerful Data, Machine Learning, and Inference Barrier to Entry ("DMIBE") that arises from three key aspects of LinkedIn's competitive position: (i) LinkedIn's critical mass of professional user data; (ii) a sophisticated machine-learning infrastructure to analyze that data; and (iii) the resulting trove of inferred user data, which can be used to predict and monetize user behavior such as whether a user will respond to an InMail message, whether a user will click on advertising, whether a user's content will propagate through the social network, or whether the user is a valuable lead for marketers. FAC ¶¶ 181-231; 406-11.

Plaintiffs allege that LinkedIn has engaged in two categories of exclusionary conduct that are intended to and have maintained its PSN Market monopoly. First and foremost, LinkedIn approaches potential rivals (those best positioned to traverse the DMIBE) and offers them its most valuable commodity—access to its private user data, through application programming interfaces ("APIs") unavailable to others—conditioned on an agreement not to compete. FAC ¶¶ 173-80,

3

238-52. These "private API agreements" provide potentially competitive applications access to LinkedIn user data in exchange for an express restraint on those applications competing in the PSN Market, effectively buying off LinkedIn's competition. *Id.* Second, in 2019, LinkedIn began integrating its operations with its parent company Microsoft's Azure cloud computing service at below-cost pricing, tying up scarce public cloud computing resources that most rivals—those who could not afford the massive cost of building their own computing hardware and data centers— would need to power the machine-learning systems necessary to traverse the DMIBE and enter the PSN Market. *Id.* ¶¶ 279-81. Plaintiffs allege that the Azure integration acted as an "accelerant" to the exclusionary effect of LinkedIn's private API agreements, significantly increasing the cost of entry by these potential competitors. *Id.* ¶ 282.

Plaintiffs assert claims of monopolization and attempted monopolization under Section 2 of the Sherman Act, seeking damages and injunctive relief on behalf of a class of "[a]ll persons, business associations, entities, and corporations who purchased LinkedIn Premium services or otherwise paid LinkedIn for any upgraded account features from the period beginning January 13, 2018, to the present." FAC ¶¶ 424, 438-57.

## II. HISTORY OF THE LITIGATION

On January 13, 2022, Plaintiffs filed a class action complaint asserting claims against LinkedIn under Section 2 of the Sherman Act for monopolization and attempted monopolization of the U.S. Professional Social Networking Market. Dkt. No. 1. On April 27, 2022, LinkedIn filed a motion to dismiss, which the Court granted with leave to amend on March 8, 2023. Dkt. No. 64. The Court also granted LinkedIn's motion to stay discovery. *Id.* Plaintiffs filed their First Amended Class Action Complaint ("FAC") on April 5, 2023. Dkt. No. 65. On May 10, 2023, LinkedIn moved to dismiss the FAC. Dkt. No. 73. On July 28, 2023, following a hearing on the motion, the Court partially lifted the discovery stay and directed LinkedIn "to produce to Plaintiffs any private API agreements between LinkedIn and Hoot[s]uite, Amobee, Annalect, Ogilvy, or Sprinklr by August 10, 2023." Dkt. No. 78. On August 10, 2023, LinkedIn made an initial production of API agreements and related documents pursuant to the Court's order. Joint Decl. of

Christopher Burke and Yavar Bathaee ("Burke/Bathaee Decl.") ¶ 8. The parties then filed supplemental briefing regarding these agreements. Dkt. Nos. 86, 88.

On March 21, 2024, the Court denied the motion to dismiss and lifted the discovery stay. Dkt. No. 95. The Court held that "Plaintiffs have plausibly alleged that Defendant's entry into the API agreements constitutes anticompetitive conduct and have pled an associated harm to competition. Plaintiffs thus adequately plead a Section 2 monopolization claim." *Id.* at 6-7. For the same reasons, the Court held that Plaintiffs adequately pleaded an attempted monopolization claim. *Id.* at 8. The Court did not address the Azure integration theory. *Id.* at 7 n.4.

Beginning with its August 10, 2023, court-ordered production and continuing through November 2, 2024, LinkedIn produced 12 tranches of private API agreements and related documents, for a total of 11,331 pages, which Plaintiffs reviewed and analyzed. Burke/Bathaee Decl. ¶ 10. Plaintiffs also provided discovery to LinkedIn, providing initial disclosures on April 12, 2022, and responding to LinkedIn's First Set of Requests for Production on June 25, 2024, and First Set of Interrogatories on July 8, 2024. *Id.* ¶ 12. Plaintiffs also searched for and collected potentially relevant documents in their possession, custody, or control. Crowder Decl. ¶ 19; Schulte Decl. ¶ 19; Vance Decl. ¶ 19.

## III.    THE PROPOSED SETTLEMENT

On December 3, 2024, the parties participated in a full-day, in-person mediation session with mediator Gregory Lindstrom, and had further negotiations thereafter with Mr. Lindstrom's assistance. Burke/Bathaee Decl. ¶ 13; Lindstrom Decl. ¶¶ 7-8. On December 19, 2025, the parties executed a term sheet setting forth the basic parameters of a settlement in principle. Lindstrom Decl. ¶ 8. On December 20, 2024, the parties jointly filed a notice of settlement in principle. Dkt. No. 117. On January 7, 2025, the Court held a case management conference and ordered Plaintiffs' counsel to file a statement on the anticipated timing of the filing of the motion for preliminary approval, which they did on February 18, 2025. Dkt. Nos. 121, 122. Over the next several months, the parties completed many of the tasks necessary to bring the proposed settlement to the Court, including hiring a notice administrator (A.B. Data, Ltd.), developing a notice program, obtaining data from LinkedIn regarding the composition of the putative class, and

working to finalize a stipulation of settlement. Dkt. No. 127. In addition, beginning with a March 7 mediation session with Mr. Lindstrom and in subsequent discussions with him, the parties mediated the issue of the maximum amount of attorney's fees, costs, and service awards to be sought by Plaintiffs. Dkt. Nos. 124,127; Burke/Bathaee Decl. ¶ 19; Lindstrom Decl. ¶ 9 n.1. The fees and costs mediation took place after the substantive terms of the Settlement were agreed on, and the substantive terms were not contingent on the outcome of that mediation. Burke/Bathaee Decl. ¶ 19; Lindstrom Decl. ¶ 9 n.1. On June 16, 2025, the parties executed the Stipulation and Agreement of Settlement. Burke/Bathaee Decl. ¶ 18; Ex. 1.

### A.    The Settlement Class

The proposed Settlement Class is defined as:

> all persons, entities, and corporations in the United States who purchased LinkedIn Premium services online on LinkedIn.com or via a LinkedIn mobile application from the period beginning January 13, 2018, to the present and are current LinkedIn members.

Ex. 1 ¶ 1.33. Excluded from the Settlement Class are: (a) the Defendant; (b) its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case. *Id.* Because the Settlement provides only prospective injunctive relief, the proposed Settlement Class is necessarily narrower than the class defined in the FAC in that it includes only those purchasers of LinkedIn Premium services who are current LinkedIn members; those who have closed their LinkedIn accounts would not be included. This is not an obstacle to approval, as "class definitions are often modified for purposes of settlement." *Etter v. Thetford Corp.*, 2016 WL 11745096, at *12 (C.D. Cal. Oct. 24, 2016) (collecting cases).

### B.    The Settlement Relief

As confirmed in discovery, LinkedIn's private API agreements contain agreements not to compete, embodied in what the Settlement Agreement defines as a "Non-Use of LinkedIn API Provision." Burke/Bathaee Decl. ¶ 11. A "Non-Use of LinkedIn API Provision" is any provision in an API agreement that "expressly restricts a partner from using LinkedIn APIs or associated LinkedIn data or content in an application that competes against LinkedIn's primary lines of

business." Ex. 1 ¶ 1.16. This is consistent with Plaintiffs' theory that LinkedIn suppresses competition by (1) identifying its biggest competitive threats—companies with the means, opportunity, and incentive to traverse the DMIBE and enter the PSN Market; (2) offering them privileged access to valuable LinkedIn user data for use in their products, intertwining those products with LinkedIn's private APIs and thereby making it less likely that these erstwhile potential rivals will break off to compete with LinkedIn in the PSN Market; and (3) imposing contractual restrictions on these counterparties' ability to compete in LinkedIn's principal lines of business, creating a massive litigation risk and further disincentive to entry. *See* FAC ¶¶ 252-53. To remediate this, the Settlement provides that for a period of three years from final approval, LinkedIn will not include a Non-Use of LinkedIn API Provision in any future API agreement and will not enforce any such provision in a current API agreement. Ex. 1 ¶ 2.1. During that time, LinkedIn will file an annual certification with the Court attesting that it is in compliance with this requirement. *Id.* ¶ 2.2. This will provide a period in which those parties best positioned to enter the PSN Market will be able to compete unfettered by these restrictions, unleashing competitive forces and facilitating reduced prices and increased consumer choice for PSN consumers, including Plaintiffs and the Settlement Class.

### C.    Scope of the Release

The Settlement releases all claims of Plaintiffs and Settlement Class members that are alleged in this action or could have been alleged based on the same underlying factual predicate and encompasses both damages and injunctive-relief claims. *See* Ex. 1 ¶¶ 1.23, 1.35, 3.1.

### D.    Notice to the Class and Opt-Out Rights

Notice to the Settlement Class will be administered by a notice administrator, A.B. Data. Ex. 1 ¶ 5.1; Nordskog Decl. ¶ 1. The notice administrator will send a summary notice via LinkedIn-provided email addresses to all potential class members. Ex. 1 ¶¶ 5.2, 5.3; *see* Nordskog Decl. Ex. B (summary notice) ¶ 10. The notice administrator will also make a long-form notice available to class members on a settlement website. Ex. 1 ¶ 5.4; *see* Nordskog Decl. Ex. C (long-form notice) ¶ 17. The costs of notice will be paid by LinkedIn. Ex. 1 ¶ 5.7. Because the

Settlement releases claims for damages, Settlement Class members will be given the opportunity to opt out. *See id.* ¶ 8.4

### E.    Attorney's Fees, Costs, and Service Awards

After the substantive terms of the Settlement were agreed on, the parties mediated the maximum amount of attorney's fees, costs, and service awards to be sought by Plaintiffs. *See supra* Background, Part III. As agreed through that mediation, Plaintiffs' counsel will seek an award of attorney's fees of up to $4 million and reimbursement of costs and expenses of up to $100,000. Ex. 1 ¶ 6.1. Any fee award would be payable by LinkedIn within 15 business days, subject to repayment should the fee award is overturned or reduced. *Id.* ¶ 6.2. Plaintiffs' counsel also will apply for service awards of up to $5,000 per Plaintiff, payable by LinkedIn. *Id.* ¶ 7.1.

### F.    Other Cases[1]

No other cases will be affected by the Settlement.

### ARGUMENT

A class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Where the parties have reached a proposed settlement, Rule 23(e)(1)(B) requires a court to "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). In reviewing a proposed settlement, a court should be mindful of the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (citation omitted).

The Settlement Class meets the requirements for certification as an injunctive-relief class under Rule 23(b)(2), and the Settlement itself—which provides robust injunctive relief that remediates the exclusionary conduct at the heart of this case— is "fair, reasonable, and adequate" under Rule 23(e)(2). The Court should grant preliminary approval.

---

[1] *See* N.D. Cal. Procedural Guidance for Class Action Settlements (Prelim. Approval § 1(d)).

# I.     PLAINTIFFS HAVE ARTICLE III STANDING

For a court to approve a class action settlement, at least one named plaintiff must have Article III standing. *Frank v. Gaos*, 586 U.S. 485, 492 (2019). As current LinkedIn members and current Premium subscribers or past subscribers who intend to resubscribe when they next seek a job or career change, Crowder Decl. ¶ 5; Schulte Decl. ¶ 5; Vance Decl. ¶ 5, Plaintiffs have Article III standing to seek the injunctive relief provided by the Settlement. They allege "imminent" injuries from LinkedIn's exclusionary conduct—overcharges for LinkedIn Premium subscriptions and lack of consumer choice in the PSN Market, FAC ¶¶ 20, 412-21, 446-47, 455-57. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct.").

And Plaintiffs' threatened injuries would be redressed by the injunctive relief provided for in the Settlement. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (standing requires "that the injury would likely be redressed by judicial relief"). The key exclusionary conduct by which Plaintiffs alleged LinkedIn has maintained its PSN Market monopoly is the inclusion of agreements not to compete in its private API agreements with would-be rivals. *See supra* Background, Part I. The Settlement would enjoin LinkedIn from including or enforcing these provisions for three years from final approval, spurring competition in the PSN Market and thereby lowering prices and increasing consumer choice. *See supra* Background, Part III.B.

# II.     THE PROPOSED CLASS SHOULD BE PRELIMINARILY CERTIFIED

A plaintiff seeking to certify a settlement class must establish that the requirements of Rule 23(a) and at least one of the bases for certification under Rule 23(b) are met. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc); *Hyundai*, 926 F.3d at 556. In applying the requirements of Rule 23 to a settlement class, "manageability is not a concern" because "by definition, there will be no trial. On the other hand, in deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class or subclasses." *Hyundai*, 926 F.3d at 556-57.

Plaintiffs here seek to certify an injunctive-relief class under Rule 23(b)(2). As shown below, the requirements of Rule 23(a) and 23(b)(2) are satisfied such that the Court "will likely

9

be able to certify the class" at the final-approval stage, Fed. R. Civ. P. 23(e)(1)(B), and accordingly the Settlement Class should be preliminarily certified.

### A.    The Rule 23(a) Requirements Are Met

The Rule 23(a) factors are: numerosity, commonality, typicality, and adequacy of representation. *Olean*, 31 F.4th at 663. Each is met here.

#### 1.    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." The Settlement Class consists of approximately 9 million members. *See* Levit Decl. ¶ 9. This is far more than sufficient. *See Johnson v. City of Grants Pass*, 72 F.4th 868, 886 (9th Cir. 2023) (holding that "classes of more than sixty are sufficiently large" to satisfy numerosity requirement), *rev'd on other grounds*, 603 U.S. 520 (2024).

#### 2.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality is satisfied where the putative class members' claims "depend upon a common contention" that "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[E]ven a single common question will do." *Id.* at 359. There are several questions of law and fact that are capable of classwide resolution here, including whether: (1) the Professional Social Networking Market is a relevant antitrust market; (2) LinkedIn possesses monopoly power in that market; (3) LinkedIn has willfully maintained its monopoly in that market; and (4) there is "threatened loss or damage" from LinkedIn's exclusionary conduct entitling Plaintiffs and the class members to injunctive relief, *see* 15 U.S.C. § 26. Commonality is satisfied.

#### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical. The test of typicality is whether other members have the same or similar injury, whether the action is based

on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 969–70 (9th Cir. 2019) (cleaned up). Plaintiffs' claims and those of the other Settlement Class members all arise from the same course of conduct (including LinkedIn's use of anticompetitive private API agreements) and allege the same injury (monopoly overcharges for Premium subscriptions and decreased consumer choice). Typicality is satisfied.

### 4.     Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy turns on two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hyundai*, 926 F.3d at 566 (citation omitted).

Plaintiffs are well suited to represent the Settlement Class. They have taken an active role in this case since before the filing of the original complaint, including by participating in discovery, searching for and providing records to counsel, staying in close contact with counsel over the last three years, and reviewing the terms of the Settlement. Crowder Decl. ¶¶ 12-20; Schulte Decl. ¶¶ 12-20; Vance Decl. ¶¶ 12-20. There are no conflicts of interest between Plaintiffs and the Settlement Class. As current LinkedIn members and current and former LinkedIn Premium subscribers, Plaintiffs have the same interest as the rest of the class in establishing LinkedIn's liability and will benefit from the proposed injunctive relief in the same way as other class members. Indeed, LinkedIn's experience shows that "many LinkedIn members are repeat subscribers to Premium services," such as when they are "seeking a new job or career opportunity," Levit Decl. ¶ 5 (LinkedIn VP of Product Management), meaning that even many class members who are not current Premium subscribers will benefit from reduced Premium prices in the future, and all class members will benefit from increased consumer choice in the PSN Market. And while the named Plaintiffs intend to apply for service awards of up to $5,000, "[i]ncentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives." *In re Online DVD-Rental Antitrust*

11

*Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). Finally, Plaintiffs' counsel are well qualified to represent the Settlement Class. They possess substantial experience prosecuting antitrust and other complex class actions and have vigorously prosecuted this action, as evidenced by the robust relief obtained for the class. *See* Burke/Bathaee Decl. ¶¶ 32-42.

### B.     The Rule 23(b)(2) Requirements Are Met

Plaintiffs seek certification of an injunctive-relief class under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." These requirements are "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *B.K.*, 922 F.3d at 971 (citation omitted). That is the case here. The injunctive relief provided by the Settlement is directed at LinkedIn's use of anticompetitive provisions in private API agreements, which allow LinkedIn to maintain its PSN Market monopoly, threatening harm to the entire Settlement Class in the form of supracompetitive Premium prices and reduced innovation and consumer choice. This relief is "uniform" in that "a single injunction . . . would provide relief to each member of the class." *Id.* (citation omitted).

### C.     The Court May Exercise Its Discretion to Permit Opt-Out Rights

Because the Settlement releases claims for damages, due process requires that Settlement Class members be given the opportunity to opt out. *See Dukes*, 564 U.S. at 363. Though members of a Rule 23(b)(2) class do not ordinarily have the right to opt out, *see id.* at 362-63, "a district court may require . . . the right to opt-out under its discretionary authority" under Rule 23, *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010); *see also Doster v. Kendall*, 54 F.4th 398, 440 (6th Cir. 2022) (noting that "many courts" have held that "a district court retains *discretion* to allow class members to opt out" of a Rule 23(b)(2) class action), *vacated on other grounds*, 144 S. Ct. 481 (2023); 2 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 4:36 (6th ed. June 2025 update) ("[N]otice and opt out rights are not required in (b)(2) class actions, but they are discretionary, may be permitted, and have been employed."); *see, e.g., Vu v. I Care Credit, LLC*, 2022 WL

12

22871480, at *6 (C.D. Cal. Nov. 4, 2022) ("Although the parties stipulated to certification under Rule 23(b)(2), because the settlement involves monetary relief and releases claims for damages, the Court has directed the parties to apply procedural protections required for classes certified under Rule 23(b)(3) such as providing class members notice and the opportunity to opt out."). Thus, the Court may certify the Settlement Class under Rule 23(b)(2) while protecting those putative class members who wish to bring damages claims by allowing them to opt out.

*    *    *

Because the Settlement Class satisfies the Rule 23(a) and Rule 23(b)(2) factors, the Court "will likely be able to certify the class" at the final-approval stage, Fed. R. Civ. P. 23(e)(1)(B). The Settlement Class should be preliminarily certified.

## III.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

To be approved, a proposed settlement must be "fair, reasonable, and adequate" under the factors set forth in Rule 23(e)(2). "The Court cannot fully assess the fairness factors until after the final approval hearing; thus, a full fairness analysis is unnecessary at this stage. At the preliminary approval stage, the settlement need only be potentially fair." *Chang v. Wells Fargo Bank, N.A.*, 2022 WL 17825122, at *7 (N.D. Cal. Dec. 20, 2022) (Gilliam, J.) (cleaned up). Before the amendment of Rule 23(e)(2) in 2018, the Ninth Circuit had set forth a non-exhaustive list of eight factors a court may consider (the "*Hanlon*" factors) to determine the appropriateness of a proposed settlement.[2] *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025). "The key *Hanlon* factors are now baked into the text of Rule 23(e), and the remaining ones can still be considered for the Rule 23(e)(2) analysis." *Id.* The Settlement meets the Rule 23(e)(2) requirements and should be preliminarily approved.

---

[2] The *Hanlon* factors, also known as the "*Churchill*" or "*Staton*" factors, are: "(1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Cal. Pizza Kitchen*, 129 F.4th at 674.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**A.      Plaintiffs and Counsel Have Adequately Represented the Class**

Rule 23(e)(2)(A) asks whether "the class representatives and class counsel have adequately represented the class." "This consideration overlaps with certain *Hanlon* factors, such as the extent of discovery completed and the stage of the proceedings, the experience and view of counsel, and the reaction of the class members of the proposed settlement." *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *8 (N.D. Cal. Nov. 6, 2023).[3]

As discussed above with respect to Rule 23(a)(4), Plaintiffs and Plaintiffs' counsel have adequately represented the Settlement Class. *See supra* Argument Part II.A.4. Plaintiffs have been actively involved in the litigation and in approving the terms of the Settlement, and their interests are aligned with those of the absent class members. Plaintiffs' counsel have extensive experience in complex antitrust class actions, have zealously prosecuted the class's claims, and have negotiated for injunctive relief that will meaningfully benefit class members.

***The extent of discovery completed and the stage of the proceedings.*** Though the volume of discovery produced by LinkedIn is modest, its significance cannot be understated. The 11,331 pages of LinkedIn private API agreements and related documents confirm the central contention of Plaintiffs' case—that LinkedIn conditioned potential rivals' access to its private user data on agreements not to compete. *See supra* Background, Part III.B. Moreover, "extensive formal discovery" is not required "where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted). "Rather, the court focuses on whether the parties carefully investigated the claims before reaching a resolution." *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2019 WL 343472, at *5 (N.D. Cal. Jan. 28, 2019) (cleaned up). As is evident from the detailed, highly technical, 115-page original complaint (Dkt. No. 1) and 88-page FAC (Dkt. No. 65), Plaintiffs thoroughly investigated their claims both before and during the pendency of this action. Further, the parties have litigated two motions to dismiss and thus "have had an opportunity to evaluate

---

[3] The reaction of class members is best assessed at the final approval hearing and "should not be considered in preliminary approval." *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 376 (N.D. Cal. 2021).

1  the strength and weaknesses of the relative claims and defenses." *Moreno*, 2019 WL 343472 at

2  *5.

3      ***The experience and views of counsel.*** Plaintiffs' counsel have combined decades of

4  experience litigating complex class actions, including antitrust matters. *See* Burke/Bathaee Decl.

5  ¶¶ 32-42. This experience informs counsel's conclusion that the proposed settlement is fair,

6  reasonable, and adequate. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).

7      Accordingly, the Rule 23(e)(2)(A) adequate-representation factor and related *Hanlon*

8  factors support preliminary approval.

9      **B.      The Settlement Was Negotiated at Arm's Length**

10      The Settlement was negotiated at arm's length under the auspices of an experienced and

11  respected mediator, Gregory Lindstrom, satisfying Rule 23(e)(2)(B). Though the presence of a

12  mediator is not dispositive, it is "a factor weighing in favor of a finding of non-collusiveness," *In*

13  *re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011)—at least, where the

14  mediation is "more than a pro forma exercise," *Cal. Pizza Kitchen*, 129 F.4th at 678 n.5. The

15  mediation here was anything but, involving detailed mediation statements, an in-person mediation

16  session, and weeks of follow-on negotiations. Lindstrom Decl. ¶¶ 6-8. Mr. Lindstrom attests that

17  "this settlement was reached through fierce litigation and substantial, arm's-length negotiations

18  by experienced antitrust counsel." *Id.* ¶ 9; *see, e.g.*, *Rodriguez*, 563 F.3d at 961 (crediting

19  mediator's attestation). This factor favors preliminary approval.

20      **C.      The Relief Provided for the Class Is Adequate**

21      Rule 23(e)(2)(C) asks whether the proposed relief is adequate, taking into account: "(i) the

22  costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of

23  distributing relief to the class, including the method of processing class-member claims; (iii) the

24  terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

25  agreement required to be identified under Rule 23(e)(3)." Considering these factors, the injunctive

26  relief here provides exceptional value to the Settlement Class and meets the test of adequacy. Not

27  only does it remediate the core exclusionary conduct in this case—thereby invigorating

28

competition in the PSN Market, leading to lower prices and increased choice for class members—but it provides virtually all the prospective relief Plaintiffs could have achieved at trial.

### 1.    Value of relief[4]

"Although not articulated as a separate factor in Rule 23(e), '[t]he relief that the settlement is expected to provide to class members is a central concern.'" *Lou v. Am. Honda Motor Co., Inc.*, 2025 WL 1359067, at *5 (N.D. Cal. May 9, 2025) (quoting Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment). The injunctive relief here is exceptional and will provide substantial value to the Settlement Class.[5]

The core theory of Plaintiffs' case is that LinkedIn identified its biggest competitive threats; offered them privileged access to valuable LinkedIn user data for use in their products, intertwining those products with LinkedIn's private APIs; and in exchange, imposed contractual restrictions on these counterparties' ability to compete in LinkedIn's principal lines of business (i.e., the Non-Use of LinkedIn API Provisions). *See* FAC ¶¶ 252-53; *supra* Background, Part III.B. Plaintiffs allege that LinkedIn maintained its PSN Market monopoly by effectively paying potential competitors not to enter the market—a well-established antitrust violation. *See FTC v. Actavis, Inc.*, 570 U.S. 136, 146 (2013). The Settlement enjoins LinkedIn from enforcing or including these noncompetition covenants in any of its private API agreements for three years from final approval, thus redressing the exclusionary conduct at the heart of this case. Ex. 1 ¶ 2.1. In short, "[t]hrough the work of class counsel, the class has obtained essentially all of . . . [the] injunctive relief that they sought." *Campbell v. Facebook Inc.*, 2017 WL 3581179, at *4 (N.D. Cal. Aug. 18, 2017), *aff'd*, 951 F.3d 1106 (9th Cir. 2020).[6]

---

[4] In terms of the *Hanlon* factors, the value of the injunctive relief corresponds to "the amount offered in settlement." *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020).

[5] The mediator agrees, attesting that "it is my belief that the injunctive relief achieved by the class as a part of this settlement . . . will substantially benefit class members." Lindstrom Decl. ¶ 10.

[6] Though the injunctive relief does not directly address LinkedIn's integration with Microsoft's Azure cloud computing service, Plaintiffs' principal theory—which the Court did not address in its FAC motion-to-dismiss opinion, *see* Dkt. No. 95 at 7 n.4—is that the Azure integration acted as an "accelerant" to the exclusionary effect of LinkedIn's private API agreements, FAC ¶ 282.

Removing these restraints will unfetter those parties best positioned to enter the PSN Market, which will facilitate increased competition and, ultimately, lower prices for LinkedIn Premium and increase consumer choice. This relief is valuable to both current and former subscribers, as Premium subscribers "tend to be repeat buyers who would derive value from the Settlement's injunctive relief upon each future purchase." *Littlejohn v. Copland*, 819 F. App'x 491, 493 (9th Cir. 2020); *see* Levit Decl. ¶ 5 (LinkedIn VP attesting that "many LinkedIn members are repeat subscribers to Premium services," such as when they are "seeking a new job or career opportunity"). And even former subscribers who don't resubscribe will benefit from increased choice in PSN products. While this evidently provides substantial value to class members, at final approval Plaintiffs anticipate quantifying that value by presenting expert testimony from an antitrust economist. Burke/Bathaee Decl. ¶ 24. Simply put, the Settlement requires LinkedIn to make real changes to its business practices that will have real value to class members. *See, e.g.*, *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1118 (9th Cir. 2021) (affirming approval of injunctive-relief settlement requiring defendant "to make changes it would not have made without the settlement, which would provide some value to the class" (cleaned up)); *Campbell*, 951 F.3d at 1122-23 (same).

Further, "the relief provided to the class cannot be assessed in a vacuum. Rather, the settlement's benefits must be considered by comparison to what the class actually gave up by settling." *Campbell*, 951 F.3d at 1123. Though the Settlement does include a release of class members' claims for damages, *cf. id.* at 1124, unlike most Rule (b)(2) settlements it simultaneously preserves putative class members' right to bring damages claims by allowing them to opt out. *See supra* Argument Part II.C. In practice, then, this settlement is analogous to the no-damages-release settlement approved of in *Campbell*, as it provides all putative class members the benefit of the injunctive relief while also allowing those who wish to pursue damages claims to do so. *See id.* at 1126 ("[T]o the extent further litigation might yield damages, absent class

---

By redressing the exclusionary effect of the API agreements themselves, the Settlement removes the primary LinkedIn-imposed obstacle to entry, facilitating increased competition in the PSN Market.

members were not prohibited from trying again to obtain such damages . . . ."); *Wit v. United Behav. Health*, 2020 WL 6462401, at *10 (N.D. Cal. Nov. 3, 2020) (reaffirming decision to certify Rule 23(b)(2) class and "allow class members to opt out of mandatory remedies (the bulk of which will, as a practical matter, apply to class members and non-class members alike . . .)"), *rev'd on other grounds*, 79 F.4th 1068 (9th Cir. 2023). As in *Campbell*, the class here "gave up very little" to obtain the injunctive relief. *See* 951 F.3d at 1123. If anything, the case for approval here is stronger, as the relief in *Campbell* provided only "modest value," *id.* at 1124—a yearlong requirement that Facebook make an informational disclosure on its website, *id.* at 1123—whereas Plaintiffs submit the three-year change in LinkedIn's business practices here will restore competition to the PSN Market and produce substantial monetary value to class members.

### 2.    The costs, risks, and delay of trial and appeal

The first consideration articulated under Rule 23(e)(2)(C) is "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). In assessing this factor, courts evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status throughout the trial." *Abadilla*, 2023 WL 7305053, at *10 (cleaned up) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). While Plaintiffs are confident they would ultimately prevail, they are not blind to the substantial risk of proceeding with this litigation, particularly when weighed against the robust relief secured for the class.

***The strength of Plaintiffs' case.*** As in most any antitrust class action, Plaintiffs face significant legal and factual hurdles in establishing a claim under Section 2 of the Sherman Act and an entitlement to classwide relief. *See Rodriguez*, 563 F.3d at 964 (noting "the difficulty of proving an antitrust case," particularly where there are "no government coattails for the class to ride"). "To establish liability under § 2, a plaintiff must show: (a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020) (cleaned up). This requires Plaintiffs to establish not only that LinkedIn is a monopolist, but that it has maintained its monopoly through anticompetitive conduct, which in turn requires

18

(1) demonstrating that the conduct had an anticompetitive effect and (2) rebutting any procompetitive justification proffered by LinkedIn or demonstrating that the anticompetitive harm of the conduct outweighs the procompetitive benefit. *Id.* at 990-91. LinkedIn can be expected to push back vigorously on all these issues. While Plaintiffs are confident in the merits of their case, proceeding through class certification, summary judgment, *Daubert* practice, and trial to obtain *any* relief for the prospective class is no foregone conclusion—let alone relief as significant as the classwide injunctive relief that has been obtained here.

*The risk, expense, complexity, and likely duration of further litigation and class certification.* Like most antitrust class actions, this litigation involves complex legal and factual issues and—in the absence of a settlement—is likely to continue for years, at significant expense to both sides. *See Rodriguez*, 563 F.3d at 966; *In re N.J. Tax Sales Certificates Antitrust Litig.*, 750 F. App'x 73, 81 (3d Cir. 2018) (noting "the complexities inherent in prosecuting a case that sounds in antitrust and that involves a settlement class of thousands"). Among other things, the PSN products and market at issue are highly technical, the alleged exclusionary conduct involves agreements with third parties (potentially requiring substantial nonparty discovery), and establishing liability, classwide impact, and damages is likely to require costly expert testimony. Further, "the class in this case does not have the benefit, like some other antitrust classes, of previous litigation between the defendant[] and the government." *Rodriguez*, 563 F.3d at 966. And while this litigation has been pending for over three years, "a number of serious hurdles remain[]" before trial, *id.*, among them class certification, *Daubert* motions, and potential motions for summary judgment. "Inevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Id.*

Against the considerable costs, risks, and delay of proceeding with this litigation, the Settlement secures meaningful relief that can be expected to provide concrete benefits to the Settlement Class. This favors preliminary approval.

### 3.    Proposed method of distributing relief to the class

The second Rule 23(e)(2)(C) consideration—"the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," Fed.

19

R. Civ. P. 23(e)(2)(C)(ii)—does not apply here, since there are no funds to distribute. *See, e.g.*, *Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *9 (N.D. Cal. Nov. 19, 2019) (applying this factor to refunds distributed to class members but not to injunctive relief).

### 4.      Proposed award of attorney's fees

The third Rule 23(e)(2)(C) consideration—"the terms of any proposed award of attorney's fees, including timing of payment," Fed. R. Civ. P. 23(e)(2)(C)(iii)—supports a finding that the proposed injunctive relief is adequate. This provision requires a court to "balance the proposed award of attorney's fees vis-à-vis the relief provided for the class." *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (quotation marks omitted). Plaintiffs submit that the injunction here will promote competition in the PSN Market and provide substantial value to the approximately 9 million putative class members in the form of lower prices for LinkedIn Premium and increased consumer choice. The value of that relief will substantially exceed the $4-million proposed fee award, as Plaintiffs intend to quantify with expert testimony at final approval.[7]

To be sure, Rule 23(e)(2)(C)(iii) requires courts to scrutinize settlements for the so-called *Bluetooth* factors that indicate potential collusion. *Briseño*, 998 F.3d at 1023-25. The presence of these factors—even all three—does not mean that a settlement is "per se collusive." *Cal. Pizza Kitchen*, 129 F.4th at 677. It simply means that the settlement "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Id.* at 675 (cleaned up). The substantial value of the relief here—which is virtually all the prospective relief Plaintiffs could have gotten at trial—is a strong indicator of the *absence* of collusion. The *Bluetooth* factors, meanwhile, do not weigh against approval.

***Disproportionate distribution of the settlement.*** The first *Bluetooth* factor is "when counsel receives a disproportionate distribution of the settlement." *Cal. Pizza Kitchen*, 129 F.4th at 675 (citation omitted). That is not the case here. Though class members do not receive monetary

---

[7] Rule 23(e)(2)(C)(iii) instructs courts to consider the "timing of payment" of a fee award. The Settlement includes a "quick pay" provision that requires payment by LinkedIn within 15 business days of a fee award. Ex. 1 ¶ 6.2. Such provisions do not weigh against approval. *In re PFA Ins. Mktg. Litig.*, 2024 WL 1145209, at *17 (N.D. Cal. Feb. 5, 2024).

distributions under the Settlement, the substantial value of the injunctive relief supports the proposed $4-million fee award. As explained in *Bluetooth*, a lodestar calculation is an appropriate measure of attorney's fees in antitrust and other class actions brought under fee-shifting statutes, "where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation." 654 F.3d at 941; *see also Campbell*, 951 F.3d at 1126 (fees may be based on lodestar method where value of injunctive relief is not "easily quantified"). By that measure, the proposed award here is reasonable. To date, Plaintiffs' counsel's lodestar is approximately $5,800,000, amounting to a lodestar multiplier of approximately 0.69. Burke/Bathaee Decl. ¶ 27.[8] Accordingly, a $4-million fee award would represent a substantial "lodestar discount," much like the $3.89-million fees and costs award approved with the injunctive-relief settlement in *Campbell*. *See* 951 F.3d at 1125.

Moreover, at final approval, Plaintiffs intend to provide expert testimony approximating the value of the injunctive relief. And given the effect Plaintiffs expect it will have on competition in the PSN Market, Plaintiffs anticipate that its value will be great enough that a $4-million fee award would come in below the 25% "benchmark" typically used to assess proportionality, *Campbell*, 951 F.3d at 1126. Finally, that the Settlement preserves the rights of putative class members to opt out and thereby pursue damages claims (while still benefiting from the injunction) is further evidence that class counsel did not "bargain[] away any potentially valuable relief," *id.*

***"Clear sailing" arrangement.*** The second *Bluetooth* factor is "when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee." *Cal. Pizza Kitchen*, 129 F.4th at 675 (citation omitted). "The concern with a 'clear sailing' arrangement is that class counsel may have obtained too little for the class in exchange for red-carpet treatment on fees." *Campbell*, 951 F.3d at 1127 (quotation marks omitted). There is a clear sailing arrangement here, but as in *Campbell*, it raises neither of these

---

[8] Plaintiffs' counsel also have incurred costs of approximately $76,000 to date, Burke/Bathaee Decl. ¶ 28, and anticipate that the final figure will exceed the $100,000 maximum they have agreed to seek from LinkedIn under the Settlement, *see* Ex. 1 ¶ 6.1

concerns and is not indicative of collusion. To begin, the agreement on fees was negotiated with the mediator, Mr. Lindstrom, and only after the parties reached agreement on the substantive terms of the Settlement. Burke/Bathaee Decl. ¶¶ 18; 24; Lindstrom Decl. ¶ 9 n.1. The Ninth Circuit has "approved such an approach" to negotiating fees, *Hyundai*, 926 F.3d at 570, and while not itself dispositive, the presence of a mediator is "a factor weighing in favor of a finding of non-collusiveness," *Bluetooth*, 654 F.3d at 948; *see, e.g.*, *Campbell*, 951 F.3d at 1115 (noting that parties negotiated fee agreement "after and independent of the other settlement terms"); *Stiner v. Brookdale Senior Living, Inc.*, 2025 WL 1676276, at *5 (N.D. Cal. June 13, 2025) (Gilliam, J.).

More fundamentally, the settlement terms belie any concern that "class counsel may have obtained too little for the class in exchange for red-carpet treatment on fees," *Campbell*, 951 F.3d at 1127. To the contrary, the injunctive relief here is virtually everything that could have been obtained at trial, and unlike most Rule 23(b)(2) settlements, this one preserves putative class members' right to bring damages claims by allowing them to opt out. Nor have Plaintiffs' counsel received "red-carpet treatment on fees." Rather, as noted, the $4-million clear sailing figure represents a substantial lodestar discount. These are the same reasons the Ninth Circuit was untroubled by the clear sailing arrangement in *Campbell*. *See* 951 F.3d at 1127 (finding clear sailing arrangement did not indicate collusion where there was no showing "that the class would have gotten meaningfully more injunctive or declaratory relief if Facebook had merely been permitted to oppose class counsel's fee application, which Facebook already knew would be requesting substantially less than what class counsel represented would fully compensate them"); *see, e.g.*, *Ang v. Bimbo Bakeries USA, Inc.*, 2020 WL 2041934, at *5 (N.D. Cal. Apr. 28, 2020) (Gilliam, J.) (provisionally finding that clear sailing provision in injunction-only settlement did not evidence collusion where proposed award was "a fraction" of fees and costs incurred, class counsel had assumed contingency risk, and fee award would not diminish class recovery).

**"Kicker" or "reverter" clause.** The third *Bluetooth* factor is "when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Cal. Pizza Kitchen*, 129 F.4th at 675 (citation omitted). This factor does not apply here, as "[a]n

injunctive-relief-only class settlement, by definition, has no fund into which any fees not awarded by the court could possibly revert." *Campbell*, 951 F.3d at 1127.

*     *     *

The fee arrangements here do not raise the "red flags of potential collusion" under *Bluetooth* that merit heightened scrutiny of the Settlement. *Cal. Pizza Kitchen*, 129 F.4th at 675. But even if such scrutiny were applied, the exceptional value achieved for the class, coupled with the fact that the Settlement was reached through arm's-length negotiations with an experienced mediator, establish that the Settlement was non-collusive. *See id.* at 677.

### 5.    Agreements required to be identified under Rule 23(e)(3)

There are no agreements between the parties beyond the terms set forth in the Settlement Agreement. Accordingly, this consideration under Rule 23(e)(2)(C)(iv) does not apply here.

*     *     *

Taking into account the Rule 23(e)(2)(C) considerations and relevant *Hanlon* factors, the injunctive relief provided for in the Settlement meets the test of adequacy.

### D.    The Settlement Treats Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) asks whether the proposed settlement "treats class members equitably relative to each other." Here, all class members will receive "identical injunctive relief." *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 895 (N.D. Cal. 2020), *aff'd*, 21 F.4th 1102 (9th Cir. 2021). And while the Settlement provides that Plaintiffs may apply for service (i.e., incentive) awards of up to $5,000 each, payable by LinkedIn, Ex. 1 ¶ 7.1, reasonable incentive awards are not inequitable because they "are compensation for work done on behalf of the class throughout litigation." *Google Inc. St. View*, 21 F.4th at 1115 n.6 (quotation marks omitted); *see also Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1057 (9th Cir. 2019) (noting that "reasonable incentive awards are permitted"). In the Ninth Circuit, service awards of up to $5,000 are considered "presumptively reasonable." *Chang*, 2023 WL 6961555, at *9 (Gilliam,

J.); *Guttmann v. Ole Mexican Foods, Inc.*, 2016 WL 9107426, at *6 (N.D. Cal. Aug. 1, 2016) (Gilliam, J.) (Rule 23(b)(2) class). The Settlement treats class members equitably.[9]

\*     \*     \*

Because the Settlement meets the Rule 23(e)(2) requirements, the Court "will likely be able to approve" it at the final- approval stage, Fed. R. Civ. P. 23(e)(2). The Settlement should be preliminarily approved.

## IV.    THE CLASS NOTICE PLAN SHOULD BE APPROVED

Rule 23 requires that a court approving a class action settlement "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Though not ordinarily required for Rule 23(b)(2) settlements, individualized notice must be given here because the Settlement provides class members the right to opt out. *Molski*, 318 F.3d at 952; *accord Roes*, 944 F.3d at 1048; *see, e.g.*, *Vu*, 2022 WL 22871480, at *6. As for content, "Rule 23(e) requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard," *Online DVD-Rental*, 779 F.3d at 946 (quotation marks omitted), and must apprise class members of the right to opt out, *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1120 (9th Cir. 2018). The standard is one of "reasonableness." *Id.* at 1121.

The notice plan agreed to by the parties satisfies Rule 23(e)(1)(B). To administer the plan, the parties selected A.B. Data, which has successfully implemented and coordinated some of the largest and most complex notice and administration plans in the country for class actions, including antitrust matters. The attached declaration of A.B. Data Director Eric Nordskog describes a comprehensive notice program and includes proposed class notices and A.B. Data's résumé. The proposed notice program provides individual direct notice by email via the LinkedIn-provided email addresses associated with the LinkedIn accounts of Settlement Class members, which A.B. Data will endeavor to disseminate within 28 days after the Court enters a preliminary

---

[9] This is also the view of the mediator, who attests that "[t]he interests of all potential class members were considered, without any attempt to unfairly discriminate against any members." Lindstrom Decl. ¶ 9.

approval order. A.B. Data will employ methods to maximize the number of class members who receive notice via email. Before distributing email notice, A.B. Data will perform a deliverability analysis, incorporate email best practices, and be programmatically authenticated. It will also set up a dedicated website where class members can learn more about the terms of the Settlement, their rights, dates, deadlines, and related information. And it will maintain a dedicated toll-free telephone number and email address to answer class member questions and provide additional information. Nordskog Decl. ¶¶ 2-3, 5-14, Exs. A-C. The costs of notice will be paid by LinkedIn. Ex. 1 ¶ 5.7.

Notice will be provided in plain terms and easy-to-understand language. Direct email notices will be in a short-form summary version of the long-form notice, which will be accessible on the settlement website. All forms of notice will include information about the nature of the action, the definition of the Settlement Class, the settlement itself, the rights of Settlement Class Members under the Settlement (including their right to object or opt out), and the date and location of the fairness hearing. Exemplars of the summary and long-form notices are attached as Exhibits B and C to the Nordskog Declaration.

Plaintiffs' notice plan will provide the "reasonable" notice required by Rule 23(e)(1)(B) and should be approved.

## CONCLUSION

The Settlement readily meets the standard for preliminary approval. Plaintiffs therefore respectfully request that this Court enter the attached proposed order (1) preliminarily certifying the proposed class for settlement purposes, (2) preliminarily approving the Settlement, (3) provisionally appointing Yavar Bathaee of Bathaee Dunne LLP and Christopher M. Burke of Burke LLP as co-lead class counsel, (4) provisionally appointing Plaintiffs as class representatives, (5) approving the proposed notice plan, (6) appointing A.B. Data, Ltd., as the notice administrator, and (7) setting a fairness hearing for final approval of the Settlement and to consider the application for attorney's fees, service awards, and reimbursement of litigation costs and expenses.

Dated: July 11, 2025

Respectfully submitted,

*/s/ Yavar Bathaee*
Yavar Bathaee

**BATHAEE DUNNE LLP**
Yavar Bathaee (CA 282388)
yavar@bathaeedunne.com
Andrew C. Wolinsky (CA 345965)
awolinsky@bathaeedunne.com
445 Park Avenue, 9th Floor
New York, NY 10022
Tel: (332) 322-8835

Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (*pro hac vice*)
egrauman@bathaeedunne.com
901 South MoPac Expressway
Barton Oaks Plaza I, Suite 300
Austin, TX 78746
Tel: (213) 462-2772

**BURKE LLP**
Christopher M. Burke (CA 214799)
cburke@burke.law
Yifan (Kate) Lv (CA 302704)
klv@burke.law
402 West Broadway, Suite 1890
San Diego, CA 92101
Tel: (619) 369-8244

**KOREIN TILLERY P.C.**
Carol L. O'Keefe (*pro hac vice*)
cokeefe@koreintillery.com
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Tel.: (314) 241-4844

*Attorneys for Plaintiffs and the Proposed Class*