United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

TODD CROWDER, et al.,

Plaintiffs,

v.

LINKEDIN CORPORATION,

Defendant.

Case No. 22-cv-00237-HSG (LB)

**DISCOVERY ORDER**

Re: ECF Nos. 162, 164, 167

**INTRODUCTION**

The parties have discovery disputes in this putative class action, where the plaintiffs claim monopolization and attempted monopolization from practices that allegedly allow LinkedIn to overcharge Premium subscribers, in violation of § 2 of the Sherman Act. The two categories of alleged anticompetitive conduct are (1) offering potential rivals access to LinkedIn's private user data through application-programming interfaces (API) unavailable to others, on the condition that the rivals don't compete with LinkedIn, and (2) integrating LinkedIn's user data with parent company Microsoft's Azure cloud product, thereby "tying up and driving up prices for scarce hardware resources."[1]

---

[1] Order – ECF No. 148 at 1; Disc. Letter Brs. – ECF Nos. 162, 164, 167. Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents. The court held a hearing on the discovery disputes on April 2, 2026.

Three discovery letter briefs are before the court. The first (ECF No. 162) concerns the custodians for LinkedIn's production in response to the plaintiffs' requests for production. The second (ECF No. 164) concerns the scope of production for LinkedIn's RFPs requesting that the plaintiffs search their personal social-media accounts and produce professional-networking communications and contact lists. The third (ECF No. 167) concerns the sufficiency of LinkedIn's document production of sales, pricing, and financial data.[2]

For ECF No. 162, LinkedIn must produce documents from the following disputed custodians in addition to the sixteen custodians LinkedIn has already identified: Ryan Roslansky, Daniel Shapero, and Erran Berger. For now, the plaintiffs' request to add additional custodians — Joseph Baribeau, Ines Gonzalez, Allison Guillen-Capo, Hahn Vo, Blake Lawit, Vivek Hariharan, and Dhwani Shah — is denied without prejudice (except the conceded discovery for Guillen-Capo). For RFP Nos. 13–16, LinkedIn must produce documents sufficient to show the scope and status of the Azure migration. The parties must meet and confer regarding RFP Nos. 25–26 after LinkedIn serves its responses and objections.

For ECF No. 164, the court grants LinkedIn's request in part. The plaintiffs must conduct a limited, targeted search of a subset of their social-media accounts, as described below. The court denies LinkedIn's request in RFP No. 13 for production of the plaintiffs' complete connections and follower lists.

For ECF No. 167, LinkedIn has already agreed to produce what exists back to the date that the plaintiffs seek, January 1, 2014. This is sufficient.

**ANALYSIS**

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

---

[2] Disc. Letter Brs. – ECF Nos. 162, 164, 167.

United States District Court
Northern District of California

whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b). "Pretrial discovery is ordinarily accorded a broad and liberal treatment." *Peng v. Nw. Mut. Life Ins. Co.*, No. 17-cv-01760-SI, 2017 WL 3007030, at *1 (N.D. Cal. July 14, 2017) (cleaned up) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). Moreover, "[t]he test for relevance is not overly exacting: evidence is relevant if it has 'any tendency to make . . . more or less probable . . . [a] fact [that] is of consequence in determining the action.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2018 WL 340640, at *1 (N.D. Cal. Jan. 9, 2018) (quoting Fed. R. Evid. 401).

The party moving to compel discovery "has the initial burden of establishing that the information sought is relevant to any party's claim or defense and proportional to the needs of the case." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR (AGT), 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022) (cleaned up). The party resisting discovery bears the burden of showing that the discovery should not be allowed and of supporting its objections with competent evidence. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015). Under Rule 26(b), the court must limit discovery that is "unreasonably cumulative or duplicative," obtainable from a less burdensome source, or where the burden "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1), (b)(2)(C).

The responding party generally is "in a better position" to identify those employees "most likely to possess responsive ESI." *Emerson v. Iron Mountain Info. Mgmt. Servs., Inc.*, No. 20-cv-08607-YGR (AGT), 2021 WL 8085488, at *1 (N.D. Cal. Sep. 2, 2021). That said, a requesting party may obtain additional custodians upon a showing that the disputed custodians "possess uniquely relevant information that is not available from the sources already designated." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC-JSC, 2021 WL 10282213, at *1 (N.D. Cal. Nov. 14, 2021).

**1. Custodians for LinkedIn's Document Production (ECF No. 162)**

The RFPs at issue are at ECF No. 163-1. The plaintiffs group them into four categories:

(1) **Market definition** (or **relevant market**). Information related to (1a) LinkedIn's actual or potential competition in the Professional Social Networking (PSN) Market and (1b) LinkedIn's PSN product and how it is offered and sold. (RFP Nos. 1, 5, 10, 18, 24–26.)

(2) **Monopoly power**. Information related to LinkedIn's market share, the barriers to entry surrounding the PSN Market, (2a) the Data, Machine Learning, and Inference Barrier to Entry (DMIBE), and (2b) the impacts of LinkedIn's conduct on its competitive position (anticompetitive impact). (RFP Nos. 6(b), 8, 13, 24–27.)

(3) **Anticompetitive conduct**. Information related to (3a) LinkedIn's specific intent to monopolize the PSN Market (including LinkedIn's AI/machine learning and infrastructure strategy and efforts to strengthen the DMBIE), (3b) LinkedIn's private API program and its creation and/or maintenance of monopoly power in the PSN Market (including whether LinkedIn intended to exclude rivals and forestall/decrease competition through the program), and (3c) LinkedIn's agreement with Microsoft related to Azure integration (including whether below-cost pricing for Azure compete impacted PSN competition and thereby contributed to LinkedIn's monopolization/attempted monopolization. alleged anticompetitive conduct. (RFP Nos. 1–4, 6(a), 7–8, 12–17, 19, 25–27.)

(4) **Remedy/ damages**. The RFPs concern the overcharge injury to LinkedIn Premium subscribers from the monopolization/attempted monopolization and seek (4a) financial details of LinkedIn's business and (4b) information related to LinkedIn Premium Pricing. (RFP Nos. 9–11, 22–23.)[3]

LinkedIn has agreed to produce documents from sixteen custodians.[4] The plaintiffs seek to add ten more: Joseph Baribeau, Erran Berger, Ines Gonzalez, Allison Guillen-Capo, Vivek Hariharan, Blake Lawit, Ryan Roslansky, Dhwani Shah, Daniel Shapero, and Hahn Vo.[5] LinkedIn must produce documents from the following disputed custodians: Ryan Roslansky, Daniel Shapero, and Erran Berger. For now, the plaintiffs' request to add additional custodians — Joseph Baribeau, Ines Gonzalez, Allison Guillen-Capo, Hahn Vo, Blake Lawit, Vivek Hariharan, and Dhwani Shah — is denied without prejudice (except the conceded discovery for Guillen-Capo).

The next sections address the disputed custodians in groups organized by the relevant issues.

---

[3] Disc. Letter Br. – ECF No. 162 at 2.

[4] *Id.* at 4.

[5] *Id.* at 2–3.

United States District Court
Northern District of California

**1.1 Ryan Roslansky (CEO/former CPO/Microsoft EVP) (topics 1, 1a, 1b, 2, 2a, 2b, 3a, 3b, 3c, 4a, and 4b) & Daniel Shapero (COO/interim CPO) (topics 1, 1a, 1b, 2, 3, 3a, 3b, and 3c)**

***Summary of dispute***. The plaintiffs contend that Roslansky's files are uniquely relevant because he was CPO for the launch and development of the private API program and the decision to integrate with Azure. He now has a "dual-hat" role as LinkedIn CEO and Microsoft EVP. Shapero is COO and interim CPO, leading sales, operations, marketing, pricing, and strategic planning, and served as VP of Product (2014–2019) and CBO (2019–2021).[6] LinkedIn responds that neither executive was named in the complaint, their files will contain excessive irrelevant information, and the ten already-designated business leaders will have the relevant competition documents.[7]

***Analysis***. In an antitrust monopolization case, the CEO and COO are not peripheral figures. Roslansky oversaw both pillars of the alleged anticompetitive conduct — the API program (as CPO from 2009–2020) and the Azure integration decision — and his current dual role at LinkedIn and Microsoft makes his files uniquely likely to contain documents about the competitive relationship between the two companies that lower-level custodians would not possess. Shapero similarly occupied the CPO, CBO, and COO chairs across the relevant period, giving him a span of oversight across pricing, competitive strategy, and business development that differs in kind from any single business-unit leader.

LinkedIn's objection that these executives' files will contain "excessive irrelevant information" is a proportionality concern that can be addressed through appropriate search terms, date restrictions, and the parties' existing ESI protocol — not by excluding the custodians altogether. The fact that neither executive was named in the complaint is immaterial; the question is whether their files are likely to contain responsive, non-duplicative documents, and the answer is yes. Both individuals occupied positions that gave them a unique, enterprise-wide view of competitive strategy, API policy, Azure integration, and Premium pricing that the designated business-unit leaders, by definition, do not share.

---

[6] *Id.* at 3.

[7] *Id.* at 5.

United States District Court
Northern District of California

United States District Court
Northern District of California

LinkedIn must add Roslansky and Shapero as custodians.

**1.2 Erran Berger (topics 1, 2, 3, 3a, and 4)**

*Summary of dispute*. The plaintiffs identify Berger as the leader of "engineering for LinkedIn's complete product portfolio," including Premium, who led "all growth, engagement and monetization aspects of LinkedIn's consumer experience," including "on the monetization side . . . [LinkedIn's] Premium subscription."[8] LinkedIn argues that Berger's "highly technical files" are irrelevant and disproportionate, particularly in connection with the DMIBE-related RFP Nos. 25–26, and flags that its responses to those RFPs are not yet due.[9]

*Analysis*. Berger's role is not limited to the technical subjects LinkedIn emphasizes. The plaintiffs assert, and LinkedIn does not counter, that Berger led engineering for the entire product portfolio, including Premium, and oversaw growth, engagement, and monetization. These responsibilities are directly relevant to the monopoly-power and anticompetitive-conduct issues (topics 1–4). His perspective bridges the technical and business dimensions of LinkedIn's product strategy in a way that the designated business-development or Premium-product custodians do not. The court orders LinkedIn to add Berger as a custodian for the RFPs at issue in this letter brief. The request is premature for RFP Nos. 25–26 (DMIBE) because LinkedIn's responses and objections to those RFPs are not yet due.

**1.3 Ines Gonzalez, Allison Guillen-Capo, Blake Lawit, and Hahn Vo**

*Summary of dispute*. The plaintiffs seek to add LinkedIn's General Counsel (Lawit) and three additional attorneys (Gonzalez, Guillen-Capo, and Vo) as custodians. The plaintiffs argue these attorneys are relevant because they are sole signatories to certain private API agreements, and their files may contain documents bearing on LinkedIn's intent in structuring and enforcing those agreements.[10] LinkedIn responds that while the proposed attorney-custodians signed the agreements, they did not negotiate them and are merely employees with authority to sign. It is

---

[8] *Id.* at 2 (cleaned up).

[9] *Id.* at 5.

[10] *Id.* at 2.

already offered to produce external communications between the LinkedIn attorneys who negotiated the API agreements and the API partners (Allison Guillen-Capo,[11] Jane Slater, and Christopher Grant). They, working with the business-development team, are responsible for negotiating all private API agreements and have been doing so since 2014, 2015, and 2017, respectively. The documents would yield little non-privileged, non-duplicative material.[12]

*Analysis*. The court denies this request without prejudice. LinkedIn has already offered to produce external communications between its API-negotiating attorneys and API partners. The requesting party bears the burden of showing that additional attorney custodians possess "uniquely relevant information that is not available from the sources already designated." *In re Facebook*, 2021 WL 10282213, at *1. The plaintiffs have not met that burden here. That these attorneys signed the API agreements does not, without more, establish that their custodial files will contain non-privileged, non-duplicative responsive documents beyond those produced by the business-development custodians and the existing attorney-custodians.

This ruling is without prejudice. If, after reviewing LinkedIn's production, the plaintiffs identify specific gaps that only these attorney custodians can fill, they may renew the request with a particularized showing.

### 1.4 Vivek Hariharan (topics 2, 2a, 2b, 3, 3a, 3b, and 3c)

*Summary of dispute*. The plaintiffs describe Hariharan as Engineering Director, AI Inference, Search & Recommendation, and was the Engineering Director, Feed Infrastructure. He "leads LinkedIn's AI Platform organization responsible for all online inference, retrieval, and LLM/SLM serving across Feed, Ads, Jobs, and People Search" and "established the architectural foundation for LinkedIn's current AI platform." The plaintiffs argue that he is relevant to monopoly power, barriers to entry (including the DMIBE), and anticompetitive conduct.[13] LinkedIn contends his "highly technical files" are irrelevant and disproportionate.[14]

---

[11] This at least in part falls within the plaintiffs' RFP.

[12] *Id.* at 4.

[13] *Id.* at 2–3.

[14] *Id.* at 5.

United States District Court
Northern District of California

*Analysis*. The court denies this request without prejudice. Hariharan's role is predominantly technical (AI inference, retrieval, and LLM/SLM serving infrastructure). The discovery is about the terms of API agreements and the competitive effects of Azure integration and pricing, not the engineering architecture of LinkedIn's AI systems. The plaintiffs' DMIBE theory may ultimately require technical discovery, but the request is premature because the responses are not yet due. At this stage, the plaintiffs have not demonstrated that Hariharan's files will yield responsive, non-duplicative documents for the currently ripe RFPs.

### 1.5 Dhwani Shah (topics 2, 2b, 3, 3a, and 3b)

*Summary of dispute*. The plaintiffs identify Shah as Director, Partner Engineering, leading a team focused on external developers and partner-solution engineers, who "provided product leadership for LinkedIn's members first data platform."[15] LinkedIn responds that the "technical implementation" of the API program is not at issue because the plaintiffs challenge the contractual terms of the agreements, not their technical execution.[16]

*Analysis*. The court denies this request without prejudice. The plaintiffs' claims target the API agreement terms, not the technical infrastructure through which access was provided. The designated business-development custodians and external attorney communications are more directly relevant to how API agreements were negotiated, structured, and enforced. If the plaintiffs' review of the production reveals that technical-implementation documents are necessary, they may renew this request.

### 1.6 Joseph Baribeau (topics 3, 3a, 3c, 4, and 4a)

*Summary of dispute*. The plaintiffs assert that Baribeau was the "finance" representative of the "core team" for the Blueshift aspect of the Azure migration and should be a custodian for topics related to anticompetitive conduct and financial information, including the Azure migration.[17] LinkedIn argues that the Azure migration was never completed — it was paused — and that a

---

[15] *Id.* at 3 (cleaned up).

[16] *Id.* at 4.

[17] *Id.* at 2.

custodial search for the finances of a migration that "never occurred" is disproportionate. LinkedIn is producing documents to show its use of Azure and that the migration was never restarted.[18]

*Analysis*. The court denies the plaintiffs' request to add Baribeau as a custodian. Whether the Azure migration was completed, paused, or partially implemented is itself a factual dispute, but LinkedIn's offer to produce documents sufficient to show the extent of its migration to Azure and to confirm the migration's status is an adequate starting point, as discussed in the next section. If LinkedIn's production proves inadequate, the plaintiffs may seek further relief, including the addition of Baribeau or another custodian with knowledge of Azure-related finances.

### 1.7 Azure Migration (RFP Nos. 13–16)

The First Amended Complaint (FAC) alleges that LinkedIn anticompetitively integrates with Microsoft Azure.[19] Whether that migration was completed, paused, or partially executed is a disputed factual question relevant to the plaintiffs' § 2 claims. LinkedIn submitted an email supporting its point.[20] The plaintiffs are entitled to test what actually happened through discovery. *See, e.g.*, *Strike 3 Holdings, LLC v. John Doe Subscriber*, No.: 21-cv-63-AJB-AHG, 2022 WL 22898319, at *3 (S.D. Cal. July 23, 2022). At the same time, designating custodians — at least before preliminary document discovery — could be disproportionate if the migration was halted.

LinkedIn will produce documents showing (1) the migration was never restarted and (2) the extent of its use of Azure. It suggests a Rule 30(b)(6) deposition.[21] For now, the court orders that compromise, with the proviso that there should be a full illumination through the document production of the core requests in RFP Nos. 13–16 and an illustration of LinkedIn's representation that there is no point in designating a custodian for the finances of a migration that "never occurred."[22] Then, a Rule 30(b)(6) deposition on the Azure topic can illuminate the document production. Any further discovery issues can be taken up after that deposition.

---

[18] *Id.* at 5.

[19] FAC – ECF No. 65 at 57–65 (pp. 54–62) (¶¶ 279–325).

[20] Email, Ex. B to Disc. Letter Br. – ECF No. 161-4.

[21] Disc. Letter Br. – ECF No. 162 at 5.

[22] *Id.*

United States District Court
Northern District of California

**1.8 DMIBE-Related Requests (RFP Nos. 25–26)**

LinkedIn's responses and objections to RFP Nos. 25–26 are not due until April 6, 2026.[23] Any dispute is premature.

## 2.  LinkedIn's RFPs for the Plaintiffs' Social-Media Discovery (ECF No. 164)

LinkedIn seeks two categories of discovery from the plaintiffs: (1) for RFP No. 12, communications on social-networking platforms related to professional topics; and (2) for RFP No. 13, documents sufficient to identify the plaintiffs' connections and followers on those platforms:

> **RFP No. 12**:
>
> All communications sent or received by You on any Social Networking Platform to the extent such communications are related to employment, career, occupation, hiring, selling, marketing, professional development, recruitment, professional networking, marketing, branding, professional training, or any other profession-related topics.
>
> **RFP No. 13**:
>
> Documents sufficient to identify each of the individuals, entities, corporations, or other accounts with which You are connected, followed by, follow, or otherwise linked on any Social Networking Platform.[24]

It asserts that "crucial" to the plaintiffs' monopoly claim is the allegation that other social networks (Facebook, Twitter/X, YouTube, and the like) do not compete with LinkedIn and do not provide like business or professional connections.[25]

LinkedIn limited its request to RFP No. 12 to "private, direct, and public postings, messages, and chats" (including postings where the plaintiffs are tagged, referenced, or appeared, but not including the plaintiffs' "likes" or similar reactions to posts).[26] For RFP No. 13, it wants "documents sufficient to show Plaintiffs' connections on social-media platforms."[27]

---

[23] *Id.*

[24] RFPs, Ex. A to Disc. Letter Br. – ECF No. 164-1 at 2–3.

[25] Disc. Letter Br. – ECF No. 164 at 1 (cleaned up).

[26] *Id.*

[27] *Id.* at 3.

United States District Court
Northern District of California

**2.1 RFP No. 12**

***Summary of dispute.*** LinkedIn contends that substitute products must be considered alongside the allegedly monopolizing product. The plaintiffs' use of other platforms for professional networking is central to market definition, and interrogatory responses are no substitute for document production. LinkedIn has proposed search terms and asserts that the burden on the plaintiffs is minimal.[28] The plaintiffs respond that (1) their verified interrogatory responses uniformly confirm they do not use other platforms for professional purposes, (2) LinkedIn has identified no contrary evidence in the plaintiffs' 100,216-document production (comprising 430,681 pages), (3) LinkedIn's 127 proposed search terms are "functionally unbounded and overly burdensome," and (4) the technical burden of searching platforms with limited export functionality is substantial because the platforms generally have no mechanism to export private messages, communications history, or posts from third parties tagging the plaintiffs.[29]

***Governing law***. Market definition is a central issue in a § 2 case, and "substitute products must also be considered." *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966). Evidence of how consumers actually use competing platforms is relevant to that inquiry. *See Fount-Wip, Inc. v. Reddi-Wip, Inc.*, 568 F.2d 1296, 1301 (9th Cir. 1978) (the relevant product market "depends upon the availability of alternative commodities for buyers"). At the same time, courts "have demanded a pretty solid showing of relevance and proportional scope before requiring a litigant to turn over his or her social media posts." *Brown v. City of Crescent City*, No. 18-cv-07826-EMC (TSH), 2021 WL 857694, at *1 (N.D. Cal. Mar. 8, 2021). And discovery must be proportional to the needs of the case, considering the burden on the producing party and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(1).

***Analysis***. Interrogatory responses are not a substitute for document production. But this is not a case in which the interrogatory responses are evasive or incomplete. The plaintiffs identified every social-networking platform they use and described the purpose of their use. Schulte affirmed that he

---

[28] *Id.* at 2.

[29] *Id.* at 4.

United States District Court
Northern District of California

does not use his other platforms "for business or professional purposes." Vance and Crowder described exclusively personal activities: keeping up with friends and family, viewing photos, pursuing hobbies, and following current events.[30] LinkedIn's observation — that Vance and Crowder did not aver that they do not use their social-media accounts "for business or professional purposes"[31] — is unpersuasive given the verified interrogatory responses and LinkedIn's failure to identify any documents from the plaintiffs' email production (based on LinkedIn's search terms) suggesting use of social media for professional purposes.[32]

That said, LinkedIn, like the plaintiffs, is entitled to test the plaintiffs' discovery responses through additional discovery. *Strike 3*, 2022 WL 22898319, at *3. But the 127 search terms include "relationship," "money," "sale*," "skill*," and "benefits."[33] Those terms encompass plainly personal content with no connection to professional networking.

The parties do not make it easy to sort out a proportional discovery response. The court orders the following to test the interrogatory responses.

First, any discovery is limited to platforms that plausibly could be used for professional networking. The plaintiffs identified social-media platforms including Facebook, Pinterest, Instagram, TikTok, Discord, Reddit, YouTube, Meetup, Tumblr, Google+, Doximity, and Twitter/X.[34] Some platforms seem unlikely to be used for professional networking purposes.

Second, LinkedIn's 127 terms are excessive.

Third, given this context, the parties must confer within twenty-one days to address the dispute and must consider starting with a platform that reasonably might reflect the plaintiffs' actual professional networking activity (hiring, recruitment, job seeking, networking, employment, and the like). Probably this would not include platforms like YouTube or TikTok. If, as the plaintiffs say, there are no export or search functionalities, the parties must confer about whether there are

---

[30] *Id.*

[31] *Id.* at 2.

[32] *Id.* at 4.

[33] *Id.*

[34] *Id.* at 2.

United States District Court
Northern District of California

technical solutions to this problem. LinkedIn has offered to troubleshoot difficulties.[35] It is impossible to evaluate burden, despite LinkedIn's representation that burden is minimal.[36]

### 2.2   RFP No. 13: Connection and Followers

***Summary of dispute***. LinkedIn requests "documents sufficient to show Plaintiffs' connections on social-media platforms."[37] The plaintiffs respond that disclosing every Facebook friend, Instagram follower, Reddit connection, Discord server member, and YouTube subscription has no bearing on whether LinkedIn has monopoly power in the PSN Market. They note that LinkedIn has complete data on the plaintiffs' LinkedIn usage, connections, and activity and "is the entity best positioned to demonstrate the value of its own platform relative to alternatives."[38]

***Analysis***. The court denies this request. The marginal relevance of a complete list of the plaintiffs' social-media contacts across dozens of platforms is low in the context of this case. The plaintiffs' verified interrogatory responses already describe the purpose of their use of each platform. LinkedIn has identified no basis to believe that connection lists — as distinct from communications — would materially advance the market-definition inquiry that is at issue in the case. The privacy burden of disclosing hundreds (or more) personal contacts on platforms used for friends, family, hobbies, and entertainment substantially outweighs the likely benefit. *See* Fed. R. Civ. P. 26(b)(1); *cf. Kellman v. Spokeo, Inc.*, No. 3:21-cv-08976-WHO, 2023 WL 411353, at *1 (N.D. Cal. Jan. 25, 2023). If the targeted search ordered under RFP No. 12 reveals that any plaintiff does in fact maintain a professional network on another platform, LinkedIn may renew this request as to that platform.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 3.

[38] *Id.* at 5.

United States District Court
Northern District of California

**3.   The Plaintiffs' RFPs for the LinkedIn's Financial Data (ECF No. 167)**

RFP Nos. 9 and 10 seek documents about pricing and prices paid. LinkedIn has pricing data only back to August 2017. It will run pricing terms across the files of several custodians and produce pricing from January 2014 to August 2017.[39] RFP No. 11 seeks documents about costs, revenues, and profits on U.S. sales of LinkedIn Premium services or any upgraded account features. LinkedIn will produce Premium and Flagship profit and loss information from January 1, 2017, to present, which is the only period for the data, and will produce company-wide profit and loss information and Premium-specific revenue for January 1, 2014, to January 1, 2017.[40]

LinkedIn's compromise is an acceptable resolution of this dispute.

## CONCLUSION

This resolves ECF Nos. 162, 164, and 167.

**IT IS SO ORDERED.**

Dated: April 6, 2026

_____

LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California

---

[39] Disc. Letter Br. – ECF No. 167 at 3.

[40] *Id.* at 4–5.