UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| TODD CROWDER, et al., | Case No. 22-cv-00237-HSG (LB) |
| Plaintiffs, | |
| v. | **DISCOVERY ORDER** |
| LINKEDIN CORPORATION, | Re: ECF Nos. 176, 177, 179 |
| Defendant. | |

**INTRODUCTION**

The parties have discovery disputes in this putative class action, where the plaintiffs claim monopolization and attempted monopolization from practices that allegedly allow LinkedIn to overcharge Premium subscribers, in violation of § 2 of the Sherman Act. The two categories of alleged anticompetitive conduct are (1) offering potential rivals access to LinkedIn's private user data through application-programming interfaces (API) unavailable to others, on the condition that the rivals do not compete with LinkedIn, and (2) integrating LinkedIn's user data with parent company Microsoft's Azure cloud product, thereby "tying up and driving up prices for scarce hardware resources."[1]

---

[1] Order Den. Prelim. Approval – ECF No. 135 at 1–2 (summarizing complaint); Disc. Letter Brs. – ECF Nos. 176, 177, & 179. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 22-cv-00237-HSG (LB)

The three discovery disputes are (1) whether LinkedIn must add two custodians in response to the plaintiffs' requests for production related to LinkedIn's API agreements and alleged anticompetitive conduct (ECF No. 176), (2) whether LinkedIn must produce documents responsive to the plaintiffs' RFP Nos. 24–26 concerning government antitrust investigations and the alleged Data, Machine Learning, and Inference Barrier to Entry (DMIBE) (ECF No. 177), and (3) whether LinkedIn must serve a privilege log, produce legible images, and produce certain categories of metadata for its Production Volume 23 pursuant to Paragraphs 6(f) and 8(b) of the Interim ESI Order and Paragraph 2.1 of this court's standing order (ECF No. 179).[2] Fact discovery closes September 18, 2026.[3]

For ECF No. 176, the plaintiffs' request to add two custodians — Angela Yoon and Maggie Ly — is denied without prejudice. Document production is ongoing, and the request is premature. The plaintiffs have not shown that either possesses uniquely relevant information that is not available from any of LinkedIn's nineteen designated custodians. The plaintiffs may renew their request if, after substantial completion and review of LinkedIn's production, they determine that LinkedIn has not produced or logged the documents identified by the plaintiffs in ECF 176.[4]

For ECF No. 177, the court grants the plaintiffs' request in part. For RFP No. 24, LinkedIn must reproduce all responses and documents it produced in connection with *Klein v. Meta Platforms, Inc.*, No. 20-cv-08570 (N.D. Cal.). For RFP Nos. 25–26, LinkedIn must run the plaintiffs' proposed search terms against the four custodians it has identified and provide hit counts for each custodian to the plaintiffs. The parties must meet and confer on the hit counts to discuss any narrowing of the plaintiffs' proposed terms. The plaintiffs' request that LinkedIn run its proposed search terms across all nineteen custodians is otherwise denied.

For ECF No. 179, the court grants the plaintiffs' request in part. LinkedIn must serve a privilege log for its Volume 23 production in compliance with the Interim ESI Order and this

---

[2] Disc. Letter Brs. – ECF Nos. 176, 177, 179.

[3] Scheduling Order – ECF No. 143 at 1.

[4] Disc. Letter Br. – ECF No. 176 at 4 (identifying unproduced email attachments to documents produced at LI_CROWDER_00016959 and LI_CROWDER_00042389).

court's standing order, and it must reproduce readable production images for any file in Volume 23 that contains illegible or corrupt images. The plaintiffs' request that LinkedIn produce all metadata for the Volume 23 production set is denied. LinkedIn must produce the full set of available metadata for the *Klein* production, as it has offered to do. The Interim ESI Order does not require that LinkedIn manually input missing metadata fields, and it would be unduly burdensome to LinkedIn if ordered to do so.

## LEGAL STANDARD

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b). "Pretrial discovery is ordinarily accorded a broad and liberal treatment." *Peng v. Nw. Mut. Life Ins. Co.*, No. 17-cv-01760-SI, 2017 WL 3007030, at *1 (N.D. Cal. July 14, 2017) (cleaned up) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). Moreover, "[t]he test for relevance is not overly exacting: evidence is relevant if it has 'any tendency to make . . . more or less probable . . . [a] fact [that] is of consequence in determining the action.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2018 WL 340640, at *1 (N.D. Cal. Jan. 9, 2018) (quoting Fed. R. Evid. 401).

The party moving to compel discovery "has the initial burden of establishing that the information sought is relevant to any party's claim or defense and proportional to the needs of the case." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR (AGT), 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022) (cleaned up). The party resisting discovery bears the burden of showing that the discovery should not be allowed and of supporting its objections with competent evidence. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015). Under Rule 26(b), the court must limit discovery that is "unreasonably cumulative or duplicative," obtainable from a

less burdensome source, or where the burden "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1), (2)(C).

The responding party generally is "in a better position" to identify those employees "most likely to possess responsive ESI." *Emerson v. Iron Mountain Info. Mgmt. Servs., Inc.*, No. 20-cv 08607-YGR (AGT), 2021 WL 8085488, at *1 (N.D. Cal. Sep. 2, 2021). That said, a requesting party may obtain additional custodians upon a showing that the disputed custodians "possess uniquely relevant information that is not available from the sources already designated." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC-JSC, 2021 WL 10282213, at *1 (N.D. Cal. Nov. 14, 2021).

## ANALYSIS

### 1. Custodians for LinkedIn's Document Production (ECF No. 176)

This is another dispute about LinkedIn's designated custodians.[5] On April 6, 2026, the court ordered LinkedIn to designate nineteen custodians and held that additional custodians may be ordered only on a showing that they "possess uniquely relevant information that is not available from the sources already designated."[6] LinkedIn began its custodial productions on April 27, 2026.[7] It represents that its custodial productions are ongoing.[8] The parties dispute the number of custodial documents that LinkedIn has produced to date.[9]

The plaintiffs now seek to add two additional custodians: Angela Yoon and Maggie Ly.

### 1.1    Angela Yoon (Director, Competition & Regulatory)

***Summary of Dispute.*** Ms. Yoon is an in-house attorney and "Director, Competition and Regulatory" at LinkedIn.[10] The plaintiffs contend that they have a particularized need for Ms.

---

[5] *See* Disc. Letter Br. – ECF No. 162 (concerning LinkedIn custodians).

[6] Order – ECF No. 170 at 7 (quoting *In re Facebook*, 2021 WL 10282213, at *1).

[7] Disc. Letter Br. – ECF No 176 at 1.

[8] *Id.* at 5.

[9] *Compare id.* at 1 (plaintiffs contend LinkedIn has produced 7,430 custodial documents), *with id.* at 5 n.4 (LinkedIn contends it "has produced over 39,000 documents").

[10] *Id.* at 2, 4 n.3.

Yoon's custodial files because she managed LinkedIn's response to a "competition law dispute" with an API partner, and her files will likely contain "earlier-in-time" documents that have not been collected by LinkedIn.[11] In support of this contention, the plaintiffs identify a single email thread between Ms. Yoon and an API partner concerning LinkedIn's termination of that partner's license.[12] The thread shows that Ms. Yoon exchanged two letters with that partner during their email correspondence, both of which "have not been produced."[13] The plaintiffs contend that under the existing custodial framework, these letters will never be produced because Ms. Yoon, who is not a custodian, is the sole LinkedIn employee on the transmittal emails.[14]

LinkedIn responds that there is no basis for additional custodians at this time. It argues that the plaintiffs have failed to show that Ms. Yoon possesses any uniquely relevant or non-privileged information that will not be collected from LinkedIn's existing custodians.[15] LinkedIn notes that the email thread in question includes an existing custodian, Lee Womer.[16]

*Analysis.* The court denies this request without prejudice. The requesting party bears the burden of showing that any additional custodian possesses "uniquely relevant information that is not available from the sources already designated." *In re Facebook*, 2021 WL 10282213, at *1. The plaintiffs have not made that showing. In support of their request, the plaintiffs point to a single email thread from LinkedIn's production on which Ms. Yoon appears.[17] But as LinkedIn points out, Ms. Yoon is not the only LinkedIn employee on the identified email thread. Mr. Womer appears on the first email in the thread — to which one of the unproduced letters is attached — and on an email from January 7, 2022, after the second letter was transmitted.[18] Mr. Womer's presence on the parent email and the January 7, 2022, email cuts against the plaintiffs'

---

[11] *Id.* at 2.

[12] *Id.*

[13] *Id.*

[14] *Id.* at 2–3.

[15] *Id.* at 4.

[16] *Id.*

[17] *Id.* at 2.

[18] *Id.* at 4; Email, Ex. B to Disc. Letter Br. – ECF No. 176-2 at 2–3.

assertion that Ms. Yoon possesses unique knowledge. It is plausible that the identified letters have been captured by his custodial collections. Given LinkedIn's custodial productions are still ongoing, the plaintiffs' request to add Ms. Yoon is premature.[19]

The plaintiffs' request to add Ms. Yoon as a custodian is denied without prejudice. The plaintiffs may renew their request if, after substantial completion and review of LinkedIn's production, LinkedIn has not produced or logged the identified letter attachments.[20]

### 1.2    Maggie Ly (LinkedIn's API partner relationships/API access restrictions)

***Summary of Dispute.*** The plaintiffs contend that Ms. Ly "managed LinkedIn's API partner relationships and was directly responsible for enforcing API access restrictions."[21] As with Ms. Yoon, the plaintiffs argue that Ms. Ly is in possession of uniquely relevant information largely based on a single email thread, which shows Ms. Ly inadvertently transmitting a confidential document to a customer. The plaintiffs contend that this document, an attachment to an "earlier-in-time" email in the thread, has not been produced.[22] They argue it will only be produced if Ms. Ly is designated as a custodian because she is the only LinkedIn employee on the transmittal email.[23]

LinkedIn responds that the plaintiffs have not shown that Ms. Ly possesses uniquely relevant information for two reasons. First, it points out that Ms. Ly's direct supervisors from 2019–2024, David Vambre and Larry Nelson, are existing custodians whose files (including documents related to API partnerships and strategy) are being reviewed as part of LinkedIn's ongoing document production.[24] Second, LinkedIn asserts that two custodians, Messrs. Womer and Nelson, are on the email thread that the plaintiffs identify, undercutting their contention that Ms. Ly has unique

---

[19] The plaintiffs also argue that designating additional custodians will not impose an undue burden on LinkedIn because it is using Technology-Assisted Review for its document production. Disc. Letter Br. – ECF No. 176 at 3. This argument is mooted by the court's conclusion that the plaintiffs' request to add Ms. Yoon and Ms. Ly as custodians is premature.

[20] For clarity, the parties identify the letters as attachments to the email thread produced at LI_CROWDER_00016959.

[21] Disc. Letter Br. – ECF No. 176 at 2.

[22] *Id.*

[23] *Id.* at 2–3.

[24] *Id.* at 4.

knowledge compared to already-designated sources.[25] LinkedIn also represents that its custodial productions to date are "not exhaustive" and that later productions "may yield the earlier-in-time emails" sought by the plaintiffs.[26]

*Analysis.* The plaintiffs have not shown that Ms. Ly possesses uniquely relevant information that is not available from the designated custodians. The plaintiffs' reliance on the unproduced confidential document is misplaced. The email thread shows that, upon her inadvertent transmittal of this document to a customer, Ms. Ly forwarded the relevant email to Messrs. Vambre and Womer, both of whom are designated custodians.[27] Mr. Womer — not Ms. Ly — handled the follow-up with the customer regarding the confidential document.[28] The thread itself therefore establishes a strong possibility that the unproduced email attachment will be captured by sources already designated, namely, Mr. Womer or Mr. Vambre. Given LinkedIn's ongoing custodial productions, the plaintiffs' request is premature.

The plaintiffs' request to add Ms. Ly as a designated custodian is denied without prejudice. As with Ms. Yoon, the plaintiffs may renew their request to add Ms. Ly as a custodian if, after substantial completion and review of LinkedIn's custodial productions, LinkedIn has not produced or logged the identified email attachment.[29]

## 2. Plaintiffs' RFP Nos. 24–26 (ECF No. 177)

The plaintiffs seek two categories of discovery from LinkedIn: (1) responses provided and documents produced by LinkedIn in connection with any government antitrust investigations or proceedings (RFP No. 24) and (2) documents and communications on the alleged DMIBE (RFP Nos. 25–26):

---

[25] *Id.*

[26] *Id.* at 5.

[27] *Id.* at 4; Email, Ex. C to Disc. Letter Br. – ECF No. 176-3 at 5.

[28] Email, Ex. C to Disc. Letter Br. – ECF No. 176-3 at 2–5.

[29] For clarity, the parties identify the attachment to the email thread produced at LI_CROWDER_00042389.

United States District Court
Northern District of California

**RFP No. 24:**

All responses provided, and Documents produced, in connection with any government antitrust investigation, inquiry, or proceeding (whether or not LinkedIn was the named target), including but not limited to any antitrust investigation, inquiry, or proceeding by the United States Department of Justice; the Federal Trade Commission; any state attorney general or department of justice; or the European Commission.

**RFP No. 25:**

All Documents and communications concerning LinkedIn's use of data, machine learning, and inference in its professional social networking site and LinkedIn Premium products.

**RFP No. 26:**

All Documents and communications evidencing or concerning the importance of data, machine learning, and inference to launching or expanding a professional social networking site and/or product.[30]

The court addresses the two categories of discovery requests in turn.

### 2.1    RFP No. 24

Courts will permit discovery into prior litigation or investigations where there is "significant factual and legal overlap" with the present case. *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-CV-02200-HSG (KAW), 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017); *Rumble, Inc. v. Google LLC*, No. 21-CV-00229-HSG (LJC), 2023 WL 3751797, at *7 (N.D. Cal. May 31, 2023). "This does not mean that the similarities are enough to require a *carte blanche* production of all documents from the prior investigations." *Rumble*, 2023 WL 3751797, at *7 (cleaned up).  Parties seeking discovery into prior litigation or investigations must still make proper discovery requests and identify the documents they seek to obtain with specificity. *Id.*

RFP No. 24 seeks "all" responses and documents from "any" antitrust investigation, regardless of whether LinkedIn was a named target of the investigation and without jurisdictional limitations.[31] This request is overbroad, and the plaintiffs' broad-stroke assertions that "any" government antitrust investigation would "almost certainly" overlap with its competition claims

---

[30] RFP Nos. 24–26, Ex. A to Disc. Letter Br. – ECF No. 177-1 at 2–4.

[31] *Id.* at 2 (RFP No. 24).

do not resolve that threshold issue.[32] The plaintiffs have not identified any specific government antitrust investigations that LinkedIn participated in or was otherwise involved in. But LinkedIn has; it identified the FTC's investigation of Meta Platforms and two associated litigations, *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590 (D.D.C.) and *Klein v. Meta Platforms, Inc.*, No. 20-cv-08570 (N.D. Cal.).[33] LinkedIn has agreed to reproduce the non-duplicative materials from the FTC investigation and the two related litigations by reproducing the *Klein* production, which it asserts encompasses all documents produced in the other two proceedings.[34] LinkedIn has also represented that it is working to identify other "U.S. antitrust investigations that involved topics similar to the ones at issue here and where it may have produced relevant documents."[35] In absence of the plaintiffs identifying any other litigation or investigations — and articulating how those proceedings significantly overlap with the facts and legal issues here — LinkedIn's proposal is reasonable and proportional to the needs of the case.

The plaintiffs' request is granted in part. Within twenty-one days of this order, LinkedIn must reproduce all responses and documents it produced in connection with *Klein*, in a form that complies with the court's directives in Section 3 below. The plaintiffs' request that LinkedIn produce all documents responsive to RFP No. 24 is otherwise denied.

### 2.2    DMIBE-Related Requests (RFP Nos. 25–26)

A party requesting discovery must describe the items to be produced with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A). "All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 616 (C.D. Cal. 2013) (cleaned up). Courts will limit all-encompassing discovery requests by utilizing appropriate and tailored search terms, narrowing custodians, and limiting timeframes. *See, e.g.*, *Rusoff v. Happy Grp., Inc.*, No. 21-CV-08084-YGR (LJC), 2023 WL 114224, at *6–8 (N.D. Cal. Jan. 5, 2023); *In*

---

[32] Disc. Letter Br. – ECF No. 177 at 2.

[33] *Id.* at 4.

[34] *Id.*

[35] *Id.* at 2.

*re Subpoenas to Lyfe Cap., Derek Yuan, & James Zhao*, No. 25-MC-80399-LJC, 2026 WL 773094, at \*2 (N.D. Cal. Mar. 19, 2026).

The DMIBE is "central" to the plaintiffs' theories of liability.[36] Discovery into the use and importance of "data, machine learning, and inference" in LinkedIn's professional networking site and products is therefore relevant.[37] But RFP Nos. 25 and 26 are "all-encompassing"; the requests seek "all documents and communications" related to these topics.[38] *Reinsdorf*, 296 F.R.D. at 616. Without some limitation in scope, these requests do not satisfy Rule 34(b)'s particularity standard, and they are disproportionate and unduly burdensome as written.

The parties offer different proposals for scoping the requests. The plaintiffs propose that LinkedIn run search terms (provided by the plaintiffs) across all nineteen designated custodians.[39] LinkedIn counter proposes that it will run additional search terms related to RFP Nos. 25 and 26 for four additional custodians who have direct knowledge of topics relevant to the requests.[40] But LinkedIn does not stipulate to the search terms it will run. It does not refuse to run the plaintiffs' proposed search terms, but instead notes that the terms are "excessive" and that it is "evaluating the burden of applying them."[41]

A compromise between the parties' proposals is reasonable. The relevance of the DMIBE to the plaintiffs' claims warrants discovery, but requiring LinkedIn to run new search terms across all nineteen custodians is disproportionate to the needs of the case. LinkedIn has offered to run additional search terms across four custodians who are likely to have relevant information to the DMIBE.[42] That is a reasonable and proportionate proposal, particularly where LinkedIn is already

---

[36] *Id.* ("Indeed, the DMIBE is referred to in the FAC over 50 times.").

[37] *Id.*

[38] RFP Nos. 25–26, Ex. A to Disc. Letter Br. – ECF No. 177-1 at 3–4.

[39] Disc. Letter Br. – ECF No. 177 at 3.

[40] *Id.* at 5 (identifying Ora Levit, Suhil Srinivas, and Gyanda Sachdeva, "the current and former heads of LinkedIn Premium with insight into the importance and use of data and AI in that business," and Erran Berger, "who leads engineering for LinkedIn's entire product portfolio and has insight into LinkedIn's use of data and AI more generally").

[41] *Id.*

[42] *Id.*

running competition-related search terms across the custodial files of thirteen custodians.[43] LinkedIn has represented that it is "evaluating" the burden of applying the plaintiffs' provided search terms.[44] LinkedIn should complete that evaluation for the four new custodians so that the parties may assess the burden to LinkedIn as compared to the potential relevance of the discovery.

The plaintiffs' request is granted in part. Within twenty-one days of this order, LinkedIn must run the plaintiffs' proposed search terms against the four custodians it has identified and provide hit counts for each custodian to the plaintiffs. The parties are further ordered to meet and confer on the hit counts to discuss any potential narrowing of the plaintiffs' proposed terms. The plaintiffs' request that LinkedIn run the proposed search terms across all nineteen custodians is otherwise denied.

### 3. Metadata, Readable Images, and Privilege Log Re LinkedIn's Production (ECF No. 179)

The parties' final dispute concerns LinkedIn's Production Volume 23.[45] Volume 23 was produced on May 8, 2026.[46] LinkedIn describes Volume 23 as a "go-and-get" production responsive to the plaintiffs' RFP No. 24, pulled from LinkedIn's nonparty production in *Klein*.[47] There are three disputes related to Volume 23: (1) whether LinkedIn must produce a privilege log for redacted documents in the production set, (2) whether LinkedIn must produce readable production images for all files in the production set, and (3) whether LinkedIn is required to produce a metadata overlay for the production set that complies with Paragraph 6(f) of the Interim ESI Order.

---

[43] *Id.*

[44] *Id.*

[45] Contrary to LinkedIn's assertion that there is no impasse, these issues are disputed and properly before the court. Disc. Letter Br. – ECF No. 179 at 3.

[46] *Id.* at 1.

[47] *Id.* at 3.

United States District Court
Northern District of California

### 3.1    Privilege Log

A party that withholds information on the basis of attorney-client privilege must substantiate its privilege claims. Fed. R. Civ. P. 26(b)(5). The court's standing order requires production of a privilege log no later than fourteen days after the party's disclosures or discovery responses are due.[48] This does not preclude the parties from stipulating to a different schedule.

The plaintiffs assert that LinkedIn has not produced a privilege log for its Volume 23 production.[49] Volume 23 is comprised of files LinkedIn produced in the separate *Klein* action. The plaintiffs identify multiple files with privilege-based redactions.[50] LinkedIn does not dispute that it has not provided a privilege log for Volume 23. It instead argues that creating a privilege log would not be proportional to the needs of the case; it did not create a privilege log for the production in *Klein*, and it contends doing so here would be "extremely time-consuming" and result in "marginal utility."[51]

LinkedIn is not excused from its obligations under Rule 26(b)(5) and this court's standing order to produce a privilege log for its Volume 23 production. There is no exception to the standing order's privilege-log requirement for documents reproduced from unrelated or separate litigation. LinkedIn has produced redacted documents on the basis of attorney-client privilege in this litigation; it must substantiate those redactions. Fed. R. Civ. P. 26(b)(5). LinkedIn's argument that creating a privilege log would be disproportional to the needs of the case does not relieve it of this obligation.[52] Any burden to LinkedIn from reviewing and logging the redacted documents in Volume 23 is of its own design; LinkedIn redacted the documents in the first instance, and it is required to provide the basis for those redactions.

---

[48] Standing Order for Magistrate Judge Laurel Beeler at 3 (¶ 2.1); *see also* Interim ESI Order – ECF No. 61 at 9 (¶ 8(b)) ("The parties agree to follow Magistrate Judge Beeler's procedures governing the production of privilege logs.").

[49] Disc. Letter Br. – ECF No. 179 at 1.

[50] *Id.* at 2.

[51] *Id.* at 5 n.3.

[52] *Id.*

United States District Court
Northern District of California

The plaintiffs' request is granted. Within twenty-one days of this order, LinkedIn must serve a privilege log compliant with Paragraph 8(b) of the Interim ESI Order and Paragraph 2.1 of the court's standing order for all documents in Volume 23 that were redacted or withheld on the basis of attorney-client privilege. If this timeline is not sufficient, LinkedIn can propose a reasonable timeline for the log.

### 3.2    Legible Images

Documents must be produced in a reasonably usable form. Fed. R. Civ. P. 34(b)(2)(E). The plaintiffs contend that multiple documents in Volume 23 contain corrupt or illegible images that cut off large portions of the documents.[53] LinkedIn acknowledges this issue with the production set but argues that Volume 23 was a go-and-get production pulled directly from the *Klein* production itself, meaning the documents were produced in the same form as they were produced in *Klein*.[54] LinkedIn contends that this is "precisely what Plaintiffs' RFP 24 requested."[55]

The form in which documents were produced in *Klein* has no bearing on how the same documents must be produced here. LinkedIn is obligated to produce all documents, in any production volume, in a reasonably usable form. It has not done so with Volume 23. Its argument that RFP No. 24 requests documents as they were produced in the underlying antitrust investigation or proceeding is not supported by the plain language of the interrogatory.[56]

The plaintiffs' request is granted as modified: LinkedIn must reproduce readable production images of all documents in Volume 23 that contain corrupt or illegible images. LinkedIn must produce the readable documents within twenty-one days of this order, absent stipulation of the parties or further order of the court.

---

[53] *Id.* at 1.

[54] *Id.* at 3.

[55] *Id.* at 3–4.

[56] RFP No. 24, Ex. A to Disc. Letter Br. – ECF No. 177-1 at 2 ("All responses provided, and *Documents produced*, in connection with any government antitrust investigation, inquiry, or proceeding . . . ." (emphasis added)).

United States District Court
Northern District of California

### 3.3    Metadata For *Klein* Production

The plaintiffs argue that LinkedIn must provide all metadata, including custodian identities (beyond listing "LinkedIn" as a custodian) and accurate timestamps, for documents in the Volume 23 production.[57] LinkedIn responds that it is working to reproduce the *Klein* production with all reasonably accessible metadata, and that it has no obligation under Paragraph 6(f) of the Interim ESI Order to manually populate any of the fields for which metadata is missing.[58]

Paragraph 6(f) provides:

> Each of the metadata and coding fields set forth below that can be extracted from a document shall be produced for that document, to the extent already in existence and reasonably accessible or available. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, such data need not be produced. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following fields: (1) BEGBATES, (2) ENDBATES, (3) BEGATTACH, (4) ENDATTACH, and (5) Custodian, which may be populated by a party or its vendor.[59]

Requiring LinkedIn to collect the missing metadata from the source repository for each of the 1,099 documents in the *Klein* production — which would involve extensive searching, individual review of each document, and manual input of additional metadata fields for each file — is disproportionate to the needs of the case. It is also unnecessary. LinkedIn has represented that it is working to reproduce the entirety of the *Klein* production with all available metadata, including "SENTDATE," "SENTTIME," "FROM," "TO," and "AUTHOR."[60] This commitment satisfies LinkedIn's obligation under Paragraph 6(f) of the Interim ESI Order to produce metadata "to the extent already in existence and reasonably accessible or available."[61] The Interim ESI Order does not suggest that listing "LinkedIn" as the custodian of certain documents is unsatisfactory, and more specific custodial identities may be provided when LinkedIn reproduces the *Klein* production

---

[57] Disc. Letter Br. – ECF No. 177 at 3.

[58] *Id.* at 4.

[59] Interim ESI Order – ECF No. 61 at 6–7 (¶ 6(f)).

[60] Disc. Letter Br. – ECF No. 179 at 4.

[61] Interim ESI Order – ECF No. 61 at 6–7 (¶ 6(f)).

United States District Court
Northern District of California

with all available metadata. And the date-stamp issue identified by the plaintiffs is not something LinkedIn can remedy; it is a processing error that lies with Relativity.[62] LinkedIn has shown it would be unduly burdensome to collect all the metadata the plaintiffs request for the *Klein* production. The court will not require manual population of missing metadata fields.

The plaintiffs' request is granted in part. LinkedIn must produce the full set of available metadata for the *Klein* production, as it has already represented it will do. It is not required to manually input missing metadata fields for each document. The plaintiffs' request is otherwise denied.

## CONCLUSION

This order resolves ECF Nos. 176, 177, and 179.

**IT IS SO ORDERED.**

Dated: June 30, 2026

LAUREL BEELER
United States Magistrate Judge

---

[62] Disc. Letter Br. – ECF No. 179 at 5.