United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| TODD CROWDER, et al.,<br>Plaintiffs,<br>v.<br>LINKEDIN CORPORATION,<br>Defendant. | Case No. 22-cv-00237-HSG(LB)<br><br>**DISCOVERY ORDER**<br>Re: ECF No. 210 |

**INTRODUCTION**

In this putative class action, the plaintiffs — subscribers to LinkedIn's premium services — claim monopolization and attempted monopolization in an alleged social-networking market by (1) offering potential rivals access to LinkedIn's private user data through application-programming interfaces (API) unavailable to others, on the condition that the rivals do not compete with LinkedIn, and (2) integrating LinkedIn's user data with parent company Microsoft's Azure cloud product, thereby "tying up and driving up prices for scarce hardware resources."[1]

The parties have a discovery dispute about depositions. The plaintiffs seek leave under Federal Rule of Civil Procedure 30(a)(2)(A)(i) to take up to twenty-seven fact depositions of party

[1] Order Den. Prelim. Approval – ECF No. 135 at 1–2 (summarizing complaint); Disc. Letter Br. – ECF No. 210. Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the tops of documents.

United States District Court
Northern District of California

witnesses, without prejudice to seeking more. LinkedIn asks the court to (1) hold the plaintiffs to the presumptive ten depositions, (2) require them to serve their Rule 30(b)(6) notice now, and (3) require them to coordinate with LinkedIn on overlapping Rule 30(b)(1) and 30(b)(6) witnesses.[2] The court can decide the dispute without oral argument. Civil L.R. 7-1(b).

The court grants the plaintiffs' motion in part: the plaintiffs may take up to fifteen depositions of party witnesses, a number that includes one Rule 30(b)(6) deposition of LinkedIn, without prejudice to a renewed, witness-specific showing of need for additional depositions. Within fourteen days of this order, the plaintiffs must serve their Rule 30(b)(6) notice, and the parties must then meet and confer to coordinate overlapping Rule 30(b)(1) and Rule 30(b)(6) witnesses to ensure each witness is deposed only once, in both capacities. To the extent the parties have separate disputes related to particular deponents, including apex witnesses, they are directed to follow the discovery procedures provided in this court's standing order.[3]

## STATEMENT

The operative complaint challenges two categories of alleged anticompetitive conduct: (1) LinkedIn's conditioning access to its private APIs on certain partners' agreement not to compete with it, and (2) LinkedIn's migration of its cloud-computing operations to Microsoft Azure.[4] Document discovery to date has been extensive: LinkedIn has nineteen designated custodians, including former CEO Ryan Roslansky and current CEO Daniel Shapero, and it has produced thousands of custodial documents.[5]

The plaintiffs seek to depose twenty-seven party witnesses. Five are current or former senior executives (Mr. Roslansky, Mr. Shapero, former CEO Jeff Weiner, co-founder Reid Hoffman, and former Chief Product Officer Tomer Cohen), and the remaining twenty-two are current or former

[2] Disc. Letter Br. – ECF No. 210 at 1.

[3] Standing Order (attached).

[4] Order Den. Prelim. Approval – ECF No. 135 at 1–2; Disc. Letter Br. – ECF No. 210 at 3.

[5] Order – ECF No. 170 at 2, 5–6; Disc. Letter Br. – ECF No. 176 at 1, 5; Disc. Letter Br. – ECF No. 210 at 1–2. The district court referred discovery to the undersigned. Order – ECF No. 44.

LinkedIn employees grouped by subject: four on market definition and competition, three on monopoly power and the alleged Data, Machine Learning, and Inference Barrier to Entry (DMIBE), ten on the private-API program (including two in-house lawyers who helped negotiate API agreements), and five on Premium pricing.[6] For each proposed deponent, the plaintiffs cite produced documents that, they contend, show the witness's personal involvement in the challenged conduct (which spans ten years) or unique knowledge of market definition, monopoly power, or pricing, all topics central to the plaintiffs' claims.[7]

LinkedIn responds that the plaintiffs' showing of particularized need largely rests on the witnesses being designated custodians or appearing in the document production. It contends that the plaintiffs misread many of the documents they cite and provides an appendix that, it asserts, provides the fuller context for those produced materials. LinkedIn contends that several of the plaintiffs' proposed deponents (including an in-house lawyer and the engineer who leads LinkedIn's AI-inference platform) have nothing to do with the challenged conduct, and that other witnesses are at least facially duplicative because they work on the same issues and teams.[8] LinkedIn also seeks an order requiring the plaintiffs to serve their Rule 30(b)(6) notice now and to work with LinkedIn to address overlapping Rule 30(b)(1) and Rule 30(b)(6) witnesses.[9]

Fact discovery closes on September 18, 2026.[10] The plaintiffs have noticed Rule 30(b)(1) depositions of LinkedIn witnesses, but the parties do not represent that depositions have begun.[11] The parties met and conferred in writing throughout June 2026 and by video on June 18, 2026; they are at an impasse.[12]

---

[6] Disc. Letter Br. – ECF No. 210 at 1–3. The plaintiffs describe the Premium-pricing group as "six individuals" but list five. *Id.* at 3.

[7] *Id.* at 1–3.

[8] *Id.* at 3–5; App. A – ECF No. 209-3.

[9] Disc. Letter Br. – ECF No. 210 at 5.

[10] Scheduling Order – ECF No. 143.

[11] *See* Disc. Letter Br. – ECF No. 210 at 4 n.1 (stating that the plaintiffs have noticed depositions of several current and former C-suite executives).

[12] *Id.* at 1.

United States District Court
Northern District of California

**LEGAL STANDARD**

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b). "Pretrial discovery is ordinarily accorded a broad and liberal treatment." *Peng v. Nw. Mut. Life Ins. Co.*, No. 17-cv-01760-SI, 2017 WL 3007030, at *1 (N.D. Cal. July 14, 2017) (cleaned up) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). "The test for relevance is not overly exacting: evidence is relevant if it has 'any tendency to make . . . more or less probable . . . [a] fact [that] is of consequence in determining the action.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2018 WL 340640, at *1 (N.D. Cal. Jan. 9, 2018) (quoting Fed. R. Evid. 401).

The party moving to compel discovery "has the initial burden of establishing that the information sought is relevant to any party's claim or defense and proportional to the needs of the case." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR (AGT), 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022) (cleaned up). The party resisting discovery has the burden of showing that the discovery should not be allowed and of supporting its objections with competent evidence. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015). Under Rule 26(b), the court must limit discovery that is "unreasonably cumulative or duplicative," obtainable from a less burdensome source, or where the burden "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1), (b)(2)(C).

Rule 30(a)(2) limits the number of depositions that each side may take (without leave or stipulation) to ten. "A party seeking to exceed the presumptive number of depositions must make a particularized showing of the need for the additional discovery." *Authentec, Inc. v. Atrua Techs., Inc.*, No. C 08-1423 PJH, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008). "To that end, courts will generally not grant leave to expand the number of depositions until the moving party has

exhausted the ten depositions permitted as of right under Rule 30(a)(2)." *Id.* "When evaluating a party's request to expand discovery limitations, the court must ensure that the discovery sought is 'relevant to [the] party's claim[s] or defense[s]' and not unreasonably cumulative, duplicative, or burdensome." *Newport v. Burger King Corp.*, No. C-10-04511-WHA (DMR), 2011 WL 3607973, at *1 (N.D. Cal. Aug. 16, 2011) (quoting Fed. R. Civ. P. 26(b)).

## ANALYSIS

### 1. The Plaintiffs' Request for Twenty-Seven Depositions

Ten depositions are too few for this case. The plaintiffs' claims are "narrow" in the sense that they target two categories of conduct, but that conduct spans more than a decade, hundreds of API agreements, a major cloud migration, and pricing across multiple Premium product lines.[13] The document production to date reflects this scope, with thousands of custodial files produced.[14] And this court's previous orders have acknowledged the breadth of the underlying conduct by ordering additional custodians and search terms.[15] While sometimes courts require a party to exhaust the depositions it is permitted before seeking more, courts depart from this when there are multiple parties and the case's complexity warrants more depositions. *See Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C-01-21151 JW (PVT), 2007 WL 3306496, at *5–6 (N.D. Cal. Nov. 6, 2007). That is the case in this putative class action; it would be disproportional to hold the plaintiffs to the presumptive ten depositions under Rule 30(a)(2)(A).

But twenty-seven depositions is too many, at least on this record. Much of the plaintiffs' showing hinges on the requested witnesses being designated custodians or appearing on produced documents.[16] This falls short of the plaintiffs' burden of making a particularized showing of need: custodial status and document counts do not, by themselves, establish that a witness will offer

---

[13] *Id.* at 1, 3.

[14] Disc. Letter Br. – ECF No. 176 at 1, 5 n.3 (representing that as of June 8, 2026, LinkedIn has produced thousands of custodial documents).

[15] Order – ECF No. 170 at 2, 5–6; Order – ECF No. 202 at 2, 10–11.

[16] Disc. Letter Br. – ECF No. 210 at 2–3.

relevant and non-cumulative deposition testimony. *See Newport*, 2011 WL 3607973, at *1. The plaintiffs' argument — that "a bare minimum of 19 depositions" is needed to cover LinkedIn's nineteen custodians — is similarly misguided. It assumes that every custodian must be deposed, without any showing of how deposing each custodian amounts to relevant, non-duplicative, and proportional discovery. Custodians are chosen because their files are likely to contain responsive documents, which is a reason to collect their files, not necessarily a reason to depose them. *See In re Actos Antitrust Litig.*, 639 F. Supp. 3d 453, 455 (S.D.N.Y. 2022) (permitting fifteen depositions in a case with twenty-five custodians).

The plaintiffs' request also suffers from a duplication problem, which is illustrated by their grouping of witnesses by category: four witnesses for competition issues, three for the DMIBE and Azure, five for pricing, and ten for LinkedIn's API program.[17] The plaintiffs have not explained why they require more than one or two witnesses per category, and they ignore the possibility that a Rule 30(b)(6) designee may supplement testimony on these categories.[18] *Cf. Jones v. Sunbelt Rentals, Inc.*, No. 22-CV-05954-AMO-PHK, 2023 WL 10691302, at *4 (N.D. Cal. Nov. 16, 2023). As the defendants point out, some of the witnesses within particular categories are at least facially cumulative: the API witnesses include six members of LinkedIn's business-development team and two in-house lawyers who helped negotiate the agreements.[19] Particularly where the plaintiffs have yet to take a single deposition, their request to depose multiple individuals with overlapping knowledge, responsibilities, and teams risks duplicative and disproportionate discovery. And for some of the twenty-seven witnesses, relevance is thin: the plaintiffs do not explain, for example, how the engineering of LinkedIn's AI-inference platform (as opposed to the alleged use of data advantages to exclude rivals) bears on the challenged conduct and justifies deposing the relevant engineer.[20]

---

[17] *Id.* at 2–3.

[18] *Id.* at 5 (making this point).

[19] *Id.*

[20] *Id.* at 3, 5.

The plaintiffs point to produced documents for most identified witnesses that purportedly show the relevance of the requested deponent's testimony.[21] The parties dispute what these documents actually demonstrate.[22] The court does not resolve those document-by-document disputes here, and it draws no conclusions about the good faith of either party. It is enough that, on both sides' submissions, the showing for a number of the proposed deponents rests primarily on their names being on produced documents, rather than a particularized demonstration of unique knowledge.

A reasonable approach lies between the parties' positions: leave to take up to fifteen depositions of party witnesses, a number that includes one Rule 30(b)(6) deposition of LinkedIn (which counts as one deposition regardless of the number of designees). The plaintiffs may choose the deponents, subject to any protective-order rulings, which lets them prioritize the witnesses they contend have unique knowledge. The leave is without prejudice: if, after substantially completing the fifteen depositions, the plaintiffs can make a witness-specific showing that additional depositions are necessary, non-duplicative, and proportional, they may raise the issue through the court's discovery-dispute process. This middle course is consistent with decisions managing comparable cases. *In re Actos*, 639 F. Supp. 3d at 455.

**2. The Plaintiffs' Rule 30(b)(6) Notice and Coordination of Overlapping Witnesses**

Rule 30(b)(6) protects an organization from "an unnecessarily large number of [its] officers and agents being deposed" by allowing it to designate witnesses to testify to the corporation's knowledge. *United States v. HVI Cat Canyon, Inc.*, No. CV 11-5097 FMO (SSX), 2016 WL 11683593, at *5 (C.D. Cal. Oct. 26, 2016) (cleaned up). Courts regularly require parties to combine a witness's Rule 30(b)(1) deposition with their Rule 30(b)(6) deposition during discovery. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-MD-03047-YGR (PHK), 2025 WL 1009362, at *6 (N.D. Cal. Apr. 4, 2025) (collecting cases).

The plaintiffs say that they will take a Rule 30(b)(6) deposition but do not give a reason for

[21] *Id.* at 1–3.

[22] *Id.* at 2–5; *see also* App. A – ECF No. 209-3.

withholding their topics, stating only that their Rule 30(b)(6) notice is "forthcoming."[23] Serving the notice now will let the parties identify overlaps and sequence individual and corporate testimony efficiently — part of the proportionality that Rule 26 requires. Within fourteen days of this order, the plaintiffs must serve their Rule 30(b)(6) notice. The parties must then meet and confer to coordinate overlapping witnesses. Each overlapping witness is to be deposed once, in both capacities, with examination presumptively limited to one day of seven hours, Fed. R. Civ. P. 30(d)(1), absent a stipulation or further court order.

### 3. Disputes Regarding Individual Deponents

The court declines to adjudicate which of the plaintiffs' noticed Rule 30(b)(1) depositions may go forward. The parties' discovery letter brief concerns the number of depositions the plaintiffs may take. This order resolves that dispute and goes no further. LinkedIn has represented that it will move separately for a protective order on apex grounds. The court will decide those issues, if necessary, on that motion.[24] The parties are directed to follow the discovery procedures provided in this court's standing for any disputes related to particular deponents.[25]

## CONCLUSION

This resolves ECF No. 210.

**IT IS SO ORDERED.**

Dated: July 17, 2026

LAUREL BEELER
United States Magistrate Judge

---

[23] Disc. Letter Br. – ECF No. 210 at 1, 5.

[24] *Id.* at 4 n.1.

[25] Standing Order (attached).