UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

TODD CROWDER, et al.,

    Plaintiffs,

  v.

LINKEDIN CORPORATION,

    Defendant.

Case No. 22-cv-00237-HSG (LB)

**DISCOVERY ORDER**

Re: ECF No. 237

**INTRODUCTION**

The plaintiffs — subscribers to LinkedIn's premium services claiming monopolization and attempted monopolization — seek to depose five LinkedIn current and former C-suite executives: current CEO Daniel Shapero, former CEO Ryan Roslansky, former Chief Product Officer Tomer Cohen, former CEO Jeff Weiner, and co-founder and former CEO Reid Hoffman.[1] LinkedIn seeks a protective order under Rule 26(c)(1) barring all five "apex" depositions. It contends that the plaintiffs have not exhausted less intrusive discovery and cannot show that the five current and

---

[1] Disc. Letter Br. – ECF No. 224-2 at 2. Citations are to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents. The order cites ECF No.22-4, the partly sealed letter. The redacted version is filed at ECF No. 223.

ORDER – No. 22-cv-00237-HSG (LB)

former executives have unique first-hand knowledge, particularly where the plaintiffs have not deposed lower-level witnesses first.[2]

The court can decide the dispute without a hearing. Civ. L.R. 7-1(b). LinkedIn's motion for a protective order is denied in part and granted in part. The depositions can proceed against Messrs. Roslansky, Cohen, Hoffman, and Shapero, who have unique first-hand, nonrepetitive knowledge of relevant subjects. The deposition of Mr. Shapero is limited to four hours, and the deposition of Mr. Hoffman is limited to three hours. The motion is granted for Mr. Weiner because the record does not show his unique first-hand, nonrepetitive knowledge.

## STATEMENT

The operative complaint challenges two categories of alleged anticompetitive conduct: (1) LinkedIn's conditioning access to its private APIs on certain partners' agreement not to compete with it, and (2) LinkedIn's migration of its cloud-computing operations to Microsoft Azure.[3] The plaintiffs allege that Linked unlawfully maintained a monopoly over professional social networking and that this purported monopolization scheme was "personally devised, guided, and monitored by the company's C-suite executives."[4]

The plaintiffs seek to depose five of LinkedIn's current and former C-suite executives. Each held a senior role at LinkedIn during the relevant time. Daniel Shapero — LinkedIn's current CEO — was previously VP of Product, Chief Business Officer, and Chief Operating Officer.[5] Ryan Roslansky, who is currently an executive vice president at Microsoft, was CEO from 2020 to 2026 and Chief Product Officer before that. Tomer Cohen was Chief Product Officer from 2020 to 2026. Jeff Weiner was CEO from 2009 to 2020. Co-founder Reid Hoffman, who has been a Microsoft director since March 2017, was CEO from 2003 to 2007 and December 2008 to June 2009.[6]

---

[2] Disc. Letter Br. – ECF No. 224-2 at 2–3.

[3] Order Den. Prelim. Approval – ECF No. 135 at 1–2 (summarizing complaint).

[4] Disc. Letter Br. – ECF No. 224-2 at 4.

[5] *Id.* at 4–5.

[6] *Id.* at 2, 5–6.

ORDER – No. 22-cv-00237-HSG (LB)                    2

United States District Court
Northern District of California

The plaintiffs noticed depositions for Messrs. Shapero, Roslansky, and Cohen, served Mr. Weiner with a subpoena, and informed LinkedIn of their intent to depose Mr. Hoffman.[7] Four apex depositions were noticed before the plaintiffs deposed any lower-level LinkedIn employee or served a Rule 30(b)(6) notice. LinkedIn represents — and the plaintiffs do not dispute — that the plaintiffs have not deposed anyone on the business team that manages its API partnerships or on the Premium team.[8]

The parties previously submitted a letter brief concerning the number of fact depositions allowed to the plaintiffs. The plaintiffs identified their plan to depose Messrs. Roslanksy, Shapero, Cohen, Weiner, and Hoffman, which LinkedIn opposed on apex grounds.[9] The court allowed the plaintiffs fifteen depositions and deferred ruling on any disputes regarding particular witnesses, including apex witnesses, pending further briefing.[10] Lead counsel met and conferred about the apex dispute by videoconference on June 18, 2026, following written exchanges throughout June. The parties are at an impasse.[11]

Fact discovery closes on September 18, 2026.[12]

## LEGAL STANDARD

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b).

---

[7] *Id.* at 2. LinkedIn does not represent Mr. Weiner and does not know who does. No one has appeared on Mr. Weiner's behalf. *Id.* at 6.

[8] *Id.* at 3.

[9] Disc. Letter Br. – ECF No. 210 at 1–5.

[10] Order – ECF No. 212.

[11] Disc. Letter Br. – ECF No. 224-2 at 2.

[12] Order – ECF No. 143.

United States District Court
Northern District of California

The party moving to compel discovery "has the initial burden of establishing that the information sought is relevant to any party's claim or defense and proportional to the needs of the case." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR (AGT), 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022) (cleaned up). The party resisting discovery must show that the discovery should not be allowed and support its objections with competent evidence. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015). Under Rule 26(b), the court must limit discovery that is "unreasonably cumulative or duplicative," obtainable from a less burdensome source, or where the burden "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1), (b)(2)(C). "Pretrial discovery is ordinarily accorded a broad and liberal treatment." *Peng v. Nw. Mut. Life Ins. Co.*, No. 17-cv-01760-SI, 2017 WL 3007030, at *1 (N.D. Cal. July 14, 2017) (cleaned up) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)).

Federal Rule of Civil Procedure 26(c)(1) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by prohibiting a deposition. Fed. R. Civ. P. 26(c). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips v. GMC*, 307 F.3d 1206, 1210–1211 (9th Cir. 2002).

The doctrine governing apex depositions of high-level executives exists in tension with the otherwise broad discovery allowed for discovery and party witnesses under the federal rules. *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012).

Courts have exercised their discretion to limit apex depositions to avoid undue harassment of executives where the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* (cleaned up); *Jensen v. BNSF Rwy. Co.*, No. 3:13-cv-05955-HSG (LB), 2015 WL 3662593, at *2 (N.D. Cal. May 19, 2025). Similarly, "courts generally refuse to allow the immediate deposition of a high level executive . . . before the testimony of lower level employees with more intimate knowledge of the case has been secured." *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-5340 JF (RS), 2006 WL 2578277, at *3 n.3 (N.D. Cal. Sept. 6, 2006); *accord Mehmet v. PayPal, Inc.*, No. 5:08 CV 1961, 2009 WL 921637, at *2 (N.D. Cal. Apr. 3, 2009). But exhaustion "is a consideration, not a requirement" for

ORDER – No. 22-cv-00237-HSG (LB)                4

an apex deposition. *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. C–07–05634 CRB (DMR), 2014 WL 939287, at *5 (N.D. Cal. Mar. 6, 2014).

"In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple*, 282 F.R.D. at 263 (cleaned up). The apex doctrine is better seen as a sliding scale, not a hard rule. *See id.* (the "common application" of the doctrine "to the classic paradigm of a single-hierarchy corporate structure" is "ill-suited to determining apex status and the resulting bounds of appropriate discovery in the case of a large multi-national corporation"); *In re: Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-md-03084-CRB (LJC), 2025 WL 896412, at *2 (N.D. Cal. Mar. 24, 2025) (rules did not preclude depositions of high-level executives concerning important aspects of Uber's business model and decisions about safety policies and representations to the public).

"When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Apple*, 282 F.R.D. at 263 (cleaned up). Evidence that an executive gave direction, provided guidance, or reviewed negotiations "may go to general knowledge" but does not "demonstrate the requisite unique need" for the executive's deposition testimony. *In re Google Generative AI Copyright Litig.*, No. 23-cv-03440-EKL (SVK), 2026 WL 266627, at *1 (N.D. Cal. Feb. 2, 2026) (cleaned up). An executive's public statements are also insufficient to show need for their deposition, even if the statements are relevant to the parties' claims. *Affinity Labs of Texas v. Apple, Inc.*, No. C 09-4436 CW JL, 2011 WL 1753982, at *16 (N.D. Cal. May 9, 2011).

The apex doctrine applies to former executives "because those depositions will have outsized importance to the company as well." *Davis v. Pinterest, Inc.*, No. 19-cv-07650-HSG (TSH), 2021 WL 11117688, at *1 (N.D. Cal. May 27, 2021).

United States District Court
Northern District of California

**ANALYSIS**

A preliminary issue is the timing of the apex depositions. LinkedIn argues that a protective order is warranted because the plaintiffs have not yet exhausted less intrusive discovery: four of the apex depositions were noticed before the plaintiffs had taken any lower-level employee depositions or served a Rule 30(b)(6) notice, and the plaintiffs have not yet deposed any members of LinkedIn's API-partnerships or Premium teams.[13] But exhaustion "is a consideration, not a requirement." *In re Transpacific*, 2014 WL 939287, at *5. The plaintiffs have pursued less intrusive discovery for months, including document requests and interrogatories.[14] These efforts have led to discovery of the apex deponents' emails and strategy documents, relied on by the plaintiffs to show that each witness has unique first-hand, non-repetitive knowledge.[15] On this record, the failure to exhaust alone is not sufficient. Instead, the court considers exhaustion and the evidence about unique firsthand knowledge individually for each apex witness (especially given the imminent close of fact discovery).

A second preliminary issue is that the documents cited by the parties were not filed. While LinkedIn disputes the plaintiffs' characterizations of the documents as "incomplete and inaccurate," it does not dispute the accuracy of the excerpts and quotations in the brief.[16]

**1. Ryan Roslanksy**

The plaintiffs contend that while he was CPO, Mr. Roslanksy "spearheaded" LinkedIn's development of its partner-only API program. A

---

[13] Disc. Letter Br. – ECF No. 224-2 at 3. The court's previous order directed the plaintiffs to serve their Rule 30(b)(6) notice within fourteen days. Order – ECF No. 212 at 7–8.

[14] Disc. Letter Br. – ECF No. 224-2 at 5.

[15] *Id.* at 5–6.

[16] *Id.* at 3 & n.2.

██████████████████████████████████████████████████████████ [17] He was personally responsible for ███████████████████████████████████████ ████████████████████████████████████████████████████████ and he oversaw the organization that "manag[es] LinkedIn's API partnerships" until he became CEO in 2020.[18] Even after becoming CEO, Mr. Roslanksky remained personally engaged with competition issues; the documents show him personally weighing in on ██████████████ ████████████████████████ as late as September 2025 ████████████████████████████ ██████████████████████.[19]

LinkedIn responds that these documents show only that Mr. Roslansky received information about other employees' work and provided feedback unrelated to the API program.[20] But the documents contain Mr. Roslansky's own comments.[21] His most relevant knowledge precedes his time as CEO, when he led the development of LinkedIn's API program. While other lower-level employees may have overlapping knowledge, they cannot testify about his decision-making in building and executing the API-partnership model at the center of the case.

In sum, the plaintiffs have shown that Mr. Roslansky is likely to have unique first-hand, non-repetitive knowledge. LinkedIn's motion for a protective order is denied.

## 2. Daniel Shapero

The plaintiffs offer two documents to support Mr. Shapero's unique first-hand knowledge. The first is from November 2017 and shows Mr. Shapero weighing in on an application for █████████ ████████████, a potential competitor to LinkedIn. Mr. Shapero noted his ████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████. After being told that the ██████████████████████████████████

---

[17] *Id.* at 4 (quoting LI_CROWDER_00174719).

[18] *Id.* at 5 (quoting LI_CROWDER_00173967, LI_CROWDER_00191393).

[19] *Id.* (quoting LI_CROWDER_00140008).

[20] *Id.* at 4.

[21] *See id.* at 5.

United States District Court
Northern District of California



The second document is from three years later and shows Shapero personally directing ▮[22]

LinkedIn argues that these documents — which it characterizes as "a weekly update sent by someone else, documents prepared by others, and questions Mr. Shapero asked because he lacked first-hand knowledge of the answers" — do not support that Mr. Shapero has unique first-hand, nonrepetitive knowledge.[24]

The issue is close. On the one hand, the plaintiffs point to Mr. Shapero's documented conduct that bears directly on live issues in the case: his personal evaluation of a ▮ ▮ and his directing of ▮ around 2020. This conduct predates Mr. Shapero's time as CEO (he was appointed in April 2026), and the documents suggest that Mr. Shapero was acting as decisionmaker on the underlying issues, not merely providing guidance. *In re Google*, 2026 WL 266627, at *1. He has unique first-hand knowledge of the reasoning behind his own decisions and actions. On the other hand, Mr. Shapero is LinkedIn's current CEO, and the exhaustion factor carries weight: the plaintiffs have not deposed (or even noticed) any members of LinkedIn's Premium team, or any of the lower-level employees who worked with Mr. Shapero on the ▮ issue or ▮.[25]

The reasonable compromise is a deposition of up to four hours.

---

[22] *Id.* at 6 (quoting LI_CROWDER_00178249).

[23] *Id.* (quoting LI_CROWDER_00188009).

[24] *Id.* at 4.

[25] *Id.* at 3.

United States District Court
Northern District of California

### 3. Tomer Cohen

The plaintiffs contend that Mr. Cohen personally ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[26] They cite three documents. The first is a document produced by LinkedIn titled ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[27] The second is a document that allegedly shows from 2021 forward, LinkedIn's API-partnerships organization reported to Mr. Cohen.[28] The third document is a strategy document from October 2025 on LinkedIn's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[29]

These documents support the plaintiffs' monopolization theories, which turn on LinkedIn's Premium pricing and its alleged conditioning of access to private API partners. Collectively, they support the conclusion that Mr. Cohen has unique first-hand knowledge of LinkedIn's API-partnership program and Premium pricing. LinkedIn responds that other employees have "equal or greater knowledge" than Mr. Cohen of the same subjects and that the documents show only Mr. Cohen's knowledge about "sales tool integrations and how to frame a reasoning model," which are irrelevant to the API licensing terms and Azure computing infrastructure that underly the plaintiffs' claims.[30] But the cited documents identify Mr. Cohen as a decisionmaker on issues central to the case, including LinkedIn's API partnerships. The overlapping knowledge of other

---

[26] *Id.* at 5.

[27] *Id.* at 6 (citing LI_CROWDER_00211971).

[28] *Id.* (citing LI_CROWDER_00191393).

[29] *Id.* at 5–6 (quoting LI_CROWDER_00211971, LI_CROWDER_00155549, and LI_CROWDER_00191393).

[30] *Id.* at 3–4.

United States District Court
Northern District of California

employees does not erase Mr. Cohen's unique, first-hand knowledge of his own. LinkedIn's motion is denied.

### 4. Reid Hoffman

The plaintiffs contend that Mr. Hoffman played a direct role in API competition issues, including LinkedIn's decision to revoke developers' API access. They point to a January 2016 ████████████████ document, which shows LinkedIn ████████████████ ████████████████████ ████████████[31] LinkedIn's documents show that it viewed ████████ ████████████[32] The January 2016 document supports that Mr. Hoffman was personally involved in the decision on ████████████████████ and at least weighed in on the outcome ████████████ ████████████████[33] And, three years later as a Microsoft director, Mr. Hoffman received a ████████████████ : he was given notice that ████████████████████[34]

LinkedIn characterizes these documents differently. It contends that the documents show that Mr. Hoffman ████████████████████ ████████████[35] It does not offer any excerpts from these documents to support its characterizations, and the excerpts of the January 2016 thread that the plaintiffs provide are in tension with LinkedIn's version of the story. That thread shows Mr. Hoffman directly weighing in on the relevant decision: ████████████████████

---

[31] *Id.* at 4 (quoting LI_CROWDER_00082704).

[32] *Id.* at 5 (quoting LI_CROWDER_00153548).

[33] *Id.*

[34] *Id.* at 6 (LI_CROWDER_00084412, LI_CROWDER_00079530).

[35] *Id.* at 4.

ORDER – No. 22-cv-00237-HSG (LB)                    10

██████████████████████████████████████████████████████████
████████████████████████████████████████████████ [36] These statements, which are Mr. Hoffman's own words, reflect his decision-making: ████████████ against a potential competitor is precisely the sort of anticompetitive conduct the plaintiffs allege in their complaint. That said, the single example is ten years old. The deposition is limited to three hours.

### 5. Jeff Weiner

As a threshold matter, the plaintiffs dispute LinkedIn's ability to move for a protective order because LinkedIn's counsel does not represent Mr. Weiner. [37] Rule 26(c) allows "[a] party" from whom discovery is sought to move for a protective order. Fed. R. Civ. P. 26(c). *Cf. Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973–74 (C.D. Cal. 2010) (the general rule is that a party lacks standing to move to quash a third-party subpoena except for claims of privilege or personal rights). The apex doctrine protects LinkedIn's interests. Mr. Weiner was LinkedIn's CEO for eleven years. Though he has not worked at LinkedIn since 2020, it is likely that his deposition "will have outsized importance to the company[.]" *Pinterest*, 2021 WL 11117688, at *1.

The plaintiffs rely on two documents that purportedly show that Mr. Weiner "personally drove" LinkedIn's ██████████████████████████. [38] But the only quote the plaintiffs provide from these documents is a second-hand statement that ██████████████████ ████████████████████████████████. [39] Evidence that Mr. Weiner asked questions about LinkedIn's ████████████ "may go to general knowledge," but it does not "demonstrate the requisite unique need" for his deposition testimony. *In re Google*, 2026 WL 266627, at *1. Mr. Weiner's public statements while CEO — that LinkedIn had no direct competitors and that Salesforce, an API "partner," would not become one — alone do not justify his apex deposition (though — with a more robust record of unique knowledge — could support a

---

[36] *Id.* (LI_CROWDER_00082704).

[37] *Id.* at 5.

[38] *Id.* at 6 (citing LI_CROWDER_00376759, LI_CROWDER_00374164).

[39] *Id.*

United States District Court
Northern District of California

deposition). *Affinity Labs*, 2011 WL 1753982, at \*16.[40] This analysis might be different if the documents showed Mr. Weiner's actual personal involvement in the relevant issues. But the thin record does not show Mr. Weiner's personal engagement that amounts to unique first-hand, nonrepetitive knowledge. LinkedIn's motion is granted.

## CONCLUSION

LinkedIn's motion for a protective order is granted in part and denied in part. Depositions are allowed for Messrs. Roslansky, Cohen, Hoffman (three hours), and Shapero (four hours). The motion is granted for the deposition of Mr. Weiner because the record does not show his unique first-hand, nonrepetitive knowledge of relevant subjects.

This resolves ECF No. 223.

**IT IS SO ORDERED.**

Dated: July 31, 2026

LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California

---

[40] *Id.* at 6 (linking to Mr. Weiner's public statements).