United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| TODD CROWDER, et al.,<br>Plaintiffs,<br>v.<br>LINKEDIN CORPORATION,<br>Defendant. | Case No. 22-cv-00237-HSG (LB)<br><br>**DISCOVERY ORDER**<br>Re: ECF No. 288 |

## INTRODUCTION

In this putative antitrust class action, the parties dispute the timeliness and adequacy of LinkedIn's privilege logs.[1] The plaintiffs contend that LinkedIn — which substantially completed its document production on June 30, 2026 — served no custodial privilege log until August 3, 2026, served more than 6,000 of its roughly 7,000 log entries between August 21 and August 27, twenty-two days before the September 18 fact-discovery cutoff and while depositions of the affected custodians were underway, and served entries too generic to permit evaluation of its privilege claims. They ask the court to find the privilege waived as to every document withheld or

[1] Disc. Letter Br. – ECF No. 287-3 at 1–6 (sealed brief); *see* Disc. Letter Br. – ECF No. 288 at 1–6 (redacted, public brief). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents. The parties filed the letter brief under seal; this order identifies the two assertedly third-party-circulated documents by Bates number only and does not quote material designated as sealable.

redacted that was not timely logged, and alternatively offer a twenty-entry sample for *in camera* review.[2] LinkedIn responds that its logs tracked its privilege determinations and accompanied each rolling production from August 3 through August 27, that the logs comply with the court's standing order, that the clerical issues the plaintiffs identify have been corrected, and that it produced in full the four documents whose entries the plaintiffs specifically challenged.[3]

The court can decide the dispute without a hearing. Civil L.R. 7-1(b). The court denies the request for a wholesale waiver. Under the holistic, case-by-case approach that *Burlington* requires, stripping the privilege from thousands of documents (many of them attorney communications about the API and data agreements at the center of this case) would be a disproportionate response to a record that shows delay but also substantial volume, rolling logs once logging began, and prompt corrections. That said, LinkedIn's position that a log is due only when it completes its privilege determinations is not the standing order's rule, the timing prejudiced the plaintiffs' ability to test redactions before depositions, and the plaintiffs have raised fair questions about the logs' accuracy. Both sides propose *in camera* review, and the court orders it: the plaintiffs may select up to twenty-five entries spanning the challenged categories, LinkedIn must lodge the underlying documents and entries with chambers, LinkedIn must cure any remaining standing-order deficiencies, and — if documents from a custodian's files are de-designated, un-redacted, or produced after that custodian's deposition — the plaintiffs may reopen the deposition remotely for up to two hours. If the review shows material over-designation, the court will order tailored relief.

## STATEMENT

The court's standing order requires production of a privilege log "as quickly as possible but no later than fourteen days after the party's disclosures or discovery responses are due unless the parties stipulate to, or the court sets, another date."[4] The plaintiffs served their first requests for

[2] Disc. Letter Br. – ECF No. 287-3 at 1–3.

[3] *Id.* at 3–5.

[4] Standing Order § 2.1 (quoted at *id.* at 1). The dispute also implicates the Interim ESI Order. Interim ESI Order – ECF No. 61, ¶ 8(b); Disc. Letter Br. – ECF No. 287-3 at 1.

production in 2022, and LinkedIn responded in June 2022.[5] The district court then stayed discovery for an extended period, and the plaintiffs served further requests after the stay, most recently on June 3, 2026.[6] LinkedIn substantially completed its document production on June 30, 2026. The completion excluded custodial documents requiring privilege redactions, which LinkedIn had segregated for later privilege review.[7] As of July 28, LinkedIn had served two privilege logs: one for a single clawed-back document and one — following a court order — for Volume 23 of its production.[8]

On July 31, 2026, LinkedIn told the plaintiffs to expect an August 3 production of documents cleared during its privilege review, accompanied by a log, and committed to weekly rolling productions and logs until the review was complete.[9] The same day, LinkedIn wrote that it "did not currently plan to provide" a log for the *Klein* reproduction — a dataset reproduced wholesale from separate litigation — but would investigate; it later changed that position and logged the *Klein* materials.[10] LinkedIn then served logs on the following schedule: a 159-entry log for Volume 37 (August 3); a 382-entry log for Volume 38 (August 11); a draft *Klein* log (August 14); a 3,957-entry log for Volume 39 (August 21); a 2,347-entry log for Volume 40 (August 24); a 16-entry log for Volume 41 and a clawback log (August 26); and, on August 27, a final production log, a supplemental *Klein* log, and reproduced logs for Volumes 23, 37, and 38 and the *Klein* production. LinkedIn represented on August 27 that its privilege logging was complete.[11] It served amended logs on September 4 and a three-entry supplemental log on September 8 to address issues the plaintiffs had raised.[12] In total, LinkedIn has logged roughly 7,000 entries, about half of which involve redactions; the large majority were served on or after August 21. Fact discovery

---

[5] Disc. Letter Br. – ECF No. 287-3 at 3.

[6] *Id.* at 4 (citing Orders – ECF Nos. 64, 95).

[7] *Id.* at 1, 3.

[8] *Id.* at 1; Disc. Order – ECF No. 202 at 12–13.

[9] Disc. Letter Br. – ECF No. 287-3 at 3–4.

[10] *Id.* at 1, 4.

[11] *Id.* at 1, 3–4.

[12] *Id.* at 1, 4 n.1.

closes on September 18, 2026, and depositions of the custodians whose files carry the redactions are underway.[13] Lead counsel met and conferred on July 27 and July 31 and reached impasse.[14]

The plaintiffs contend that every *Burlington* factor supports waiver. On the logs' sufficiency, they say that more than 400 entries across five logs identify only "LinkedIn Legal Department" as the source of legal advice; that roughly 3,000 entries are described generically as concerning "API agreements / technology partnerships" and about 1,300 as "data privacy / GDPR compliance"; that the logs omit the positions of authors and recipients, where each document was found, and a confidentiality affirmation; and that entries include documents shared with Microsoft lawyers without explaining why that sharing preserves confidentiality, a position they say is in tension with LinkedIn's stance on corporate separateness elsewhere in the case.[15] They identify two documents that, they contend, LinkedIn circulated to third parties (LI_CROWDER_00558048 and LI_CROWDER_PRIV_01959), and one redaction for "prior legal advice" (LI_CROWDER_00553182) whose content, they contend, appears unredacted in another produced document (LI_CROWDER_00275737) and reads as business commentary rather than legal advice.[16] On timing, they argue that the delay dwarfs the five months at issue in *Burlington*, that the production's magnitude does not excuse it, and that logging was not unusually hard; they add that each log arrived only after a court order, a draft of this letter, or the threat of motion practice. They ask the court to find the privilege waived as to every document withheld or redacted that was not timely logged in compliance with the standing order, and alternatively offer a twenty-entry sample for *in camera* review.[17]

LinkedIn responds that its logs are timely because they tracked its privilege determinations: applying a privilege screen at substantial completion and logging documents as privilege calls are made is standard practice, and each rolling production from August 3 through August 27 was

---

[13] Scheduling Order – ECF No. 143.

[14] Disc. Letter Br. – ECF No. 287-3 at 1.

[15] *Id.* at 2 (citing Mot. – ECF No. 246 at 6).

[16] *Id.* at 2–3.

[17] *Id.* at 3.

accompanied by a log, exactly as LinkedIn committed on July 31.[18] Measuring from the 2022 requests is a "red herring," it says, because those requests were limited in scope, no privilege was asserted then, discovery was stayed, and requests were served as recently as June 3, 2026.[19] On content, LinkedIn argues that a departmental reference is permissible where the document itself shows that an attorney's advice was sought or provided; that such entries are fewer than six percent of the total; that similar descriptions naturally follow from agreed search terms targeting API and data agreements run against attorney custodians; that sharing between a parent and its subsidiary does not destroy confidentiality; that the remaining complaints are administrative errors that have been corrected; and that it has produced the four specifically challenged documents in full.[20] It asks the court to deny any waiver, decline to impose additional deadlines, and direct the parties to address individual entries in good faith.[21]

## LEGAL STANDARDS

### 1. Privilege Logs

A party withholding otherwise discoverable information on the ground of privilege must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). The undersigned's standing order sets the default schedule — a log "as quickly as possible but no later than fourteen days after" the responses are due, absent a stipulation or court order — and prescribes the log's contents, including the positions of authors and

[18] *Id.* at 3–4 (citing The Sedona Conference, *Commentary on Privilege Logs*, 25 Sedona Conf. J. 221, 272 (2024)).

[19] *Id.* at 4.

[20] *Id.* at 4–5.

[21] *Id.* at 5.

recipients, where each document was found, and an affirmation that the document was maintained in confidence.[22]

**2. Waiver**

Boilerplate objections or blanket refusals do not properly assert privilege, but untimeliness alone does not work a per se waiver. Using Rule 34's thirty-day period "as a default guideline," courts make a "case-by-case determination" that considers (1) the degree to which the objection or assertion enables the requesting party and the court to evaluate whether each withheld document is privileged; (2) the timeliness of the objection and accompanying information; (3) the magnitude of the document production; and (4) other particular circumstances that make responding to discovery unusually easy or unusually hard. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (cleaned up). The factors apply "in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." *Id.*

**ANALYSIS**

**1. Timeliness**

The plaintiffs' four-years framing overstates the delay. The 2022 requests predated a lengthy stay, and the plaintiffs served requests as recently as June 3, 2026; measuring the log's due date from 2022 does not reflect how the case was actually litigated.[23] But LinkedIn's competing theory — that a log is due whenever the producing party completes its privilege determinations — proves too much. On that view, the withholding party sets its own schedule, and the standing order's fourteen-day default means nothing. The standing order permits a different schedule only by stipulation or court order, and LinkedIn obtained neither. Even on LinkedIn's own framework — logs keyed to its June 30 substantial completion — the first custodial log arrived on August 3, five

[22] Standing Order § 2.1; Disc. Letter Br. – ECF No. 287-3 at 1–2.

[23] Disc. Letter Br. – ECF No. 287-3 at 4 (citing Orders – ECF Nos. 64, 95).

weeks later, and more than 6,000 of the roughly 7,000 entries arrived between August 21 and August 27: twenty-two days before the fact-discovery cutoff and while depositions of the affected custodians were underway. The sequence the plaintiffs describe — the Volume 23 log after a court order, the *Klein* log after LinkedIn's July 31 written position was quoted back to it, completed logs shortly before this letter was finalized — is largely borne out by the timeline, although LinkedIn's July 31 rolling-log commitment, which it kept, tempers any inference of pure gamesmanship.[24] The timeliness factor favors the plaintiffs, and the timing caused real prejudice: the plaintiffs have deposed, and are deposing, custodians whose files carry redactions that the plaintiffs could not meaningfully test.

**2. Adequacy of the Logs**

The content disputes are less one-sided. A departmental reference like "LinkedIn Legal Department" is not automatically insufficient: privilege can apply where the party cannot identify the specific attorney but the document itself makes clear that an attorney's legal advice was sought or provided. *In re Google RTB Consumer Priv. Litig.*, No. 21-cv-02155-YGR (VKD), 2023 WL 1787160, at *4 (N.D. Cal. Feb. 6, 2023). But a bare statement that a document was drafted by, or reflects advice from, a legal department — without more — does not enable assessment of the claim. *Kellman v. Whole Foods Mkt. Cal., Inc.*, No. 17-cv-06584-LB, 2021 WL 4476779, at *3 (N.D. Cal. Sep. 30, 2021). Which side of that line LinkedIn's 400-plus departmental entries fall on is an evidentiary question. So is the adequacy of the formulaic descriptions: repetition is unsurprising where agreed search terms targeting API and data agreements ran against attorney custodians, and similar documents can legitimately generate similar entries, but a description that covers roughly 3,000 documents as "API agreements / technology partnerships" must still allow the plaintiffs and the court to assess each claim. As for Microsoft, sharing legal advice between a parent and its subsidiary does not necessarily destroy confidentiality, *STM Atl. N.V. v. Dong Yin Dev. (Holdings) Ltd.*, No. 2:18-cv-01269-JLS (JCG), 2018 WL 6265089, at *8 (C.D. Cal. June 8,

[24] Disc. Letter Br. – ECF No. 287-3 at 1–2, 3–4.

United States District Court
Northern District of California

2018), and LinkedIn disclaims any single-entity theory; any tension with LinkedIn's positions on corporate separateness elsewhere in the case is a subject the plaintiffs may probe through their sample.[25]

The two documents assertedly circulated to third parties stand on different footing: disclosure outside the privileged relationship ordinarily waives the privilege, and LinkedIn's insert does not address those documents specifically. They belong in the *in camera* review unless LinkedIn de-designates them. Finally, LinkedIn represents that the standing-order omissions — positions, locations, and confidentiality affirmations — were clerical and have been cured by the September 4 and September 8 amendments, and that it produced in full the four documents whose entries the plaintiffs tested.[26] Producing the documents moots those individual disputes. It does not answer the accuracy question that the tested redaction raises — content assertedly produced unredacted elsewhere, and redacted text that the plaintiffs contend is business commentary — and that question, too, is best answered by looking at documents rather than characterizations.

**3. In Camera Review**

Weighing the *Burlington* factors holistically, the court denies the request for a blanket waiver, without prejudice. The timeliness factor favors the plaintiffs. The first factor is genuinely contested and cannot be resolved on dueling characterizations. The third and fourth factors give LinkedIn some cover: this is a large production (roughly 140,000 documents outside the *Klein* reproduction), the review required document-by-document analysis of attorney custodians' files, and the *Klein* dataset — reproduced from other litigation with limited metadata — presented real logging constraints.[27] There is also mitigation: rolling logs accompanied each production once logging began, LinkedIn amended promptly when the plaintiffs raised issues, and LinkedIn produced, rather than defended, the specifically challenged documents. On this record, stripping

[25] *Id.* at 2 (citing Mot. – ECF No. 246 at 6), 5.

[26] *Id.* at 4–5 & 4 n.1.

[27] *Id.* at 3–5.

the privilege from thousands of documents — necessarily including core attorney communications about the very agreements this case is about — would itself be the "needless waste of time and resources" that *Burlington*'s holistic approach is designed to forestall, not a proportionate remedy for late logs. 408 F.3d at 1149.

Denying a wholesale waiver is not a pass. The plaintiffs have raised fair questions about accuracy, and both sides propose *in camera* review — the plaintiffs by offering a twenty-entry sample, LinkedIn by welcoming submission of the tested documents. The court adopts that approach, with a slightly larger sample so that it can cover each challenged category. The review is a test of the logs' accuracy: if it shows material over-designation, the court will order tailored relief, which may include category-wide re-review on a short schedule, targeted findings of waiver, or fee-shifting. The timing prejudice also needs a remedy that fits it: if documents emerge from a custodian's files after that custodian's deposition, the plaintiffs may examine the custodian about them.

The court orders as follows. Within two court days of this order, the plaintiffs must identify up to twenty-five privilege-log entries for *in camera* review. The plaintiffs choose the entries, but the selection should span the challenged categories: departmental-source entries, formulaic descriptions, entries involving Microsoft counsel, and (if the plaintiffs elect) the two assertedly third-party-circulated documents. LinkedIn then must lodge them for *in camera* review and include the selected documents in unredacted form (with the produced redacted versions for comparison where applicable and the corresponding privilege log entries). LinkedIn also must provide updated privilege logs.

## CONCLUSION

This order disposes of ECF No. 288.

**IT IS SO ORDERED.**

Dated: September 10, 2026

LAUREL BEELER
United States Magistrate Judge